**Glen W. WILLIAMS,
Plaintiff-Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.**

No. 86–2353.

United States Court of Appeals,
Tenth Circuit.

April 19, 1988.

Ron Arnold of McCartney & Arnold, P.C., Cheyenne, Wyo., for plaintiff-appellant.

Jeffrey C. Blair, Asst. Regional Counsel, Dept. of Health and Human Services, Denver, Colo. (Ronald S. Luedemann, Chief Counsel, Thomas A. Nelson, Jr., Deputy Chief Counsel, Dept. of Health and Human Services, Denver, Colo., Richard A. Stacy, U.S. Atty., and Carol A. Statkus, Asst. U.S. Atty., D. Wyo., with him on the brief), for defendant-appellee.

Before McKAY, SEYMOUR, and TACHA, Circuit Judges.

McKAY, Circuit Judge.

Appellant, Glen W. Williams, appeals from an order of the district court affirming a decision of the Secretary of Health and Human Services (Secretary) that denies Mr. Williams' application for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## I.

Mr. Williams' claim for benefits has followed a lengthy and somewhat complicated course. However, it is sufficient for purposes of our review to note that (1) two applications for benefits were filed, December 10, 1982, and December 14, 1983, claiming both Social Security disability insurance benefits and SSI benefits; (2) an administrative law judge (ALJ) issued a favorable decision on February 27, 1986, recommending that disability insurance benefits be awarded retrospectively and SSI benefits be calculated and paid accordingly; and (3) the Appeals Council on its own motion reversed the ALJ's decision.[1] The decision of the Appeals Council represents the Secretary's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481 (1986). The district court affirmed the decision of the Appeals Council, finding that

substantial evidence supported the decision. Mr. Williams subsequently filed a timely notice of appeal to this court.

## II.

Mr. Williams, who is 51 years old and has a tenth grade education, has not been engaged in substantial gainful activity since May 15, 1982. Prior to that time and for the majority of his adult life, Mr. Williams had been employed as a diesel mechanic. Mr. Williams claims he is disabled within the meaning of the Social Security Act and has been under a disability since May 15, 1982, as a result of (1) chronic, disabling pain stemming from musculoskeletal impairments and (2) severe alcohol-related problems.

Mr. Williams underwent two surgeries of the cervical spine, including a spinal fusion, following a long history of degenerative disc disease. Despite this surgical intervention, the treating physician reported that Mr. Williams had not received "significant relief from pain and that his physical activity was very limited." Record, vol. 2, at 23. The ALJ stated that "it seems clear based on the objective medical evidence of record and the testimony at the hearing that [Mr. Williams] would have difficulty sitting for even two hours without experiencing a good deal of discomfort." *Id.* The ALJ also found that the medical evidence established that Mr. Williams is an alcoholic with peripheral neuropathy, liver damage, and seizures. Mr. Williams had been hospitalized following grand mal seizures and has Dilantin prescribed to control this disorder. Mr. Williams' "drinking, in combination with the medication he takes for his severe pain and seizures, would make it impossible for him to concentrate on basic work-related functions." *Id.* at 24. The ALJ found that these combined impairments were so severe that Mr. Williams was disabled and entitled to benefits.

---

1. The Appeals Council may "adopt, modify, or reject" an ALJ's recommended decision. 20 C.F.R. §§ 404.979, 416.1479 (1986). While the regulations specify certain instances when the Appeals Council will review a disability case, 20 C.F.R. §§ 404.970(a), 416.1470(a) (1986), the Appeals Council may also take additional action on any recommended decision from an ALJ. *See Fierro v. Bowen,* 798 F.2d 1351, 1354 (10th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1602, 94 L.Ed.2d 789 (1987).

On review the Appeals Council noted one instance where Mr. Williams "had mild neck pain but no back pain," *id.* at 5, and acknowledged that medical notes between October 1977 and December 1985 revealed complaints of chronic neck pain. *See id.* at 5, 327–40. However, the Appeals Council did not enter a specific finding regarding Mr. Williams' pain. The Appeals Council found Mr. Williams to have only "mild degenerative disc disease of the cervical spine[,] alcohol abuse with occasional seizures, liver inflammation and mild peripheral neuropathy." *Id.* at 7. Thus, while the existence of Mr. Williams' impairments is not disputed, the Appeals Council concluded that none of the impairments, singly or in combination, met or were medically equal to any impairment on the Secretary's listing of impairments. *See* 20 C.F.R. pt. 404, Subpt. P., App. 1 (1986). The Appeals Council further concluded that Mr. Williams retained the residual functional capacity to perform sedentary and light work, 20 C.F.R. §§ 404.1567(a)–(b), 416.-967(a)–(b) (1986), and was not disabled within the meaning of the Social Security Act. Consequently, the Appeals Council rejected the ALJ's recommended decision.

We must determine whether the Secretary's decision of nondisability, reached through action of the Appeals Council, is supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). "Evidence is not substantial 'if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.'" *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)). A decision not supported by substantial evidence must be reversed. Additionally, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984) (quoting

*Smith v. Heckler,* 707 F.2d 1284, 1285 (11th Cir.1983)). In reviewing the Secretary's decision, we meticulously examine the record and view it in its entirety. *Dollar v. Bowen,* 821 F.2d 530, 532 (10th Cir. 1987).

### III.

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982). The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985).

■ The Secretary has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1986); *see Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 2290–95, 96 L.Ed.2d 119 (1987); *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir.1987). If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.

Step one determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. If he is not, the decision maker must proceed to step two: determining "whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert,* 107 S.Ct. at 2291. This determination is governed by the Secretary's severity regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986), is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience. Pursuant to the se-

verity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986); *accord Bowen v. Yuckert,* 107 S.Ct. at 2291. Presumptively, if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity. *Bowen v. Yuckert,* 107 S.Ct. at 2293. If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

In this case, the Appeals Council found that Mr. Williams "has not engaged in substantial gainful activity since October 1981." Record, vol. 2, at 7. In addition, Mr. Williams apparently made the threshold showing that his impairments are medically severe enough to interfere with his ability to do basic work activities. *Id.* at 5–8.

Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986). *Bowen v. Yuckert,* 107 S.Ct. at 2291. If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step, 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986), where the claimant must show that the "impairment prevents [him] from performing work

he has performed in the past." *Bowen v. Yuckert,* 107 S.Ct. at 2291; *see Tillery v. Schweiker,* 713 F.2d 601, 602 (10th Cir. 1983). If the claimant is able to perform his previous work, he is not disabled.

The Appeals Council determined that Mr. Williams' impairments are not found on or medically equal to the Secretary's list of impairments conclusively presumed to be disabling. The Appeals Council found, however, that Mr. Williams is unable to return to his past relevant work as a diesel mechanic. At this point, then, Mr. Williams has met his burden of proof, establishing a prima facie case of disability.[2] The evaluation process thus proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education, and work experience." *Bowen v. Yuckert,* 107 S.Ct. at 2291. The burden of proof is now shifted to the Secretary. *Id.* at 2294 n. 5. Thus, the claimant is entitled to benefits if the Secretary cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984); 20 C.F.R. §§ 404.1520(f), 416.920(f) (1986); *see Campbell v. Bowen,* 822 F.2d at 1522; *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987).

To meet this burden, the Secretary may rely on the Medical–Vocational Guidelines (grids), 20 C.F.R., pt. 404, Subpt. P, App. 2 (1986). The grids consider a claimant's RFC in relation to his age, education, and work experience. *Channel v. Heckler,* 747 F.2d at 578. A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the

---

**2.** Under the sequential evaluation process, the claimant bears the burden of showing that he is not presently engaged in substantial gainful activity, that he has a medically severe impairment or combination of impairments, and that the impairment or combination of impairments prevents him from performing his past work. *Bowen v. Yuckert,* 107 S.Ct. at 2294 n. 5.

claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary,[3] light,[4] medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). No doubt, a claimant may have significant exertional limitations that prevent him from performing the strength requirements of even sedentary work.

■ Once a claimant is placed in a particular RFC category, the decision maker turns to the grids which direct a conclusion as to whether the claimant is or is not disabled, depending on the claimant's characteristics, i.e., his RFC category and vocational factors. If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, since nonexertional limitations are not factored into the grids but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his "ability to perform the full range of work in a particular RFC" category on a sustained basis. *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985); *Channel v. Heckler,* 747 F.2d at 579; *accord Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir.1986) ("If a claimant has a nonexertional limitation in addition to his exertional limitations, then the ALJ may not mechanically apply the rules contained in the Grid."). Thus, when a claimant suffers from both exertional and non-

exertional limitations, and the exertional limitations in and of themselves do not establish disability, the grids provide no more than a framework for determining disability. As a starting point, the grids are first applied to reflect the maximum residual strength or exertional capabilities of the claimant. The decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations. *Frey v. Bowen,* 816 F.2d at 513. In other words, if a significant number of jobs presumed by the grids to exist for a claimant cannot be performed on a continuing and regular basis because of the claimant's nonexertional limitations, the claimant may be disabled even though he may be exertionally capable of meeting the strength requirements of those jobs.

■ Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. *Channel v. Heckler,* 747 F.2d at 580.

The Appeals Council concluded that Mr. Williams is exertionally capable of performing both light and sedentary work, despite his impairments. Having made that initial determination, the Appeals Council turned to the grids and applied them without further consideration. The Secretary asserts that because Mr. Williams' pain is not disabling and his alcohol abuse is only periodic, any nonexertional limitations ensuing

---

**3.** Sedentary work is defined as work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
20 C.F.R. §§ 404.1567(a), 416.967(a) (1986).

**4.** Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of ob-

jects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
20 C.F.R. §§ 404.1567(b), 416.967(b) (1986). "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id.*

from Mr. Williams' impairments do not significantly compromise his ability to do the full range of light and sedentary work and thus do not alter the Secretary's use of the grids. The specific findings of the Appeals Council include (1) "[t]he range of light and sedentary work which the claimant can perform is not significant[ly] limited by the occasional manifestations of alcohol abuse," (2) "[t]he claimant's maximum capacity for light work has not been significantly compromised by nonexertional impairments," and (3) Mr. Williams has the RFC "to perform exertion[al] and nonexertional requirements of work except for work requiring medium or heavy exertion." Record, vol. 2, at 7. "Based on an exertional capacity for light and sedentary work and the claimant's age, education and work experience," *id.*, the grids directed a conclusion that Mr. Williams has the RFC to perform other work existing in the national economy and therefore is not disabled and was not under a disability "at any time through the date of [the Appeals Council's] decision." *Id.*

On appeal, Mr. Williams contends that this decision is not supported by substantial evidence and that the Appeals Council failed to apply correct legal standards. Specifically, Mr. Williams asserts that the Appeals Council erred in conclusively applying the grids despite evidence indicating that Mr. Williams could not perform the full range of light or sedentary work on a daily basis. According to Mr. Williams, the Appeals Council erred in evaluating his complaints of disabling pain, in assessing his credibility, and in evaluating the seriousness of his alcohol-related problems and the combined effect of his impairments on his ability to perform light and sedentary work.

## A.

The most significant feature of Mr. Williams' degenerative disc disease of the cervical spine is his long-standing complaints of pain. The legal standards for evaluating pain symptoms are contained in the Secretary's regulations, 20 C.F.R. §§ 404.1529, 416.929 (1986), and the Social

Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794. *See Avery v. Secretary of Health and Human Services,* 797 F.2d 19, 22 (1st Cir. 1986) (Secretary's new instructions go beyond language of regulation to conform to Congressional Act). This court recently outlined the framework that is to be used in evaluating a disability claim based on pain. *See Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). The process is described as follows:

> If a pain-producing impairment is demonstrated by objective medical evidence, the decision maker must consider the relationship between the impairment and the pain alleged. "[T]he impairment or abnormality must be one which 'could reasonably be expected to produce' the *alleged* pain." ... If an appropriate nexus does exist, the decision maker must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling.

*Id.* at 163 (citation omitted). The first component of the inquiry, the objective impairment prerequisite, is fulfilled without regard to subjective evidence. The second component, a nexus between the impairment and the alleged pain, is examined "tak[ing] the subjective allegations of pain as true." *Id.* Upon reaching the third component—considering all evidence presented—the decision maker considers all medical data presented, any other objective indications of pain, and subjective accounts of the severity of the pain. At this point, the decision maker may assess the claimant's credibility. *Id.*

It is undisputed that Mr. Williams' degenerative disc disease is an impairment capable of producing pain. Since the first component is present, our attention focuses on the nexus between this impairment and Mr. Williams' subjective allegations of pain. The impairment must be reasonably expected to produce the pain that is being claimed. *Id.* However, the nexus between the impairment and the alleged pain can be loose. "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain" are sufficiently consist-

ent to satisfy this part of the evaluation process. *Id.* at 164.

Mr. Williams' treating physician submitted a report verifying that Mr. Williams had "undergone two different surgical procedures for the neck pain." Record, vol. 2, at 284. Mr. Williams testified before the ALJ that he quit work as a diesel mechanic because "[i]t [was] just hurting so bad." *Id.* at 82. Mr. Williams produced prescription bottles for three pain medications—Darvocet, Tylenol with codeine, and Feldene—at his disability hearing, *id.* at 84, 86–93, but stated that he took these medications only on an irregular basis because they made him feel "goofy." *Id.* at 92. Mr. Williams testified that his current activities now include light housework and shopping and that he "like[s] to sleep." *Id.* at 105. Likewise, Mr. Williams' girlfriend stated:

> [H]e's constantly rubbing his neck, going like this and he tells me he hurts. And I believe him. I think he is hurting. And I think he takes medication to help and he'll sleep for hours and hours at a time, you know, like he'll sleep 10 hours and then wake up and he says he's still hurting.

*Id.* at 154–55. This evidence is more than adequate to establish a reasonable relationship between Mr. Williams' medical diagnosis and his allegations of pain.

Since the appropriate nexus exists, we examine the third component of the pain inquiry—considering all evidence presented. As mentioned, the decision maker may assess the claimant's credibility and "decide whether he believes the claimant's assertions of severe pain." *Luna v. Bowen,* 834 F.2d at 163.

The ALJ found that Mr. Williams' "testimony concerning his subjective limitations [was] supported by the diagnostic findings and appeared fully credible." Record, vol. 2, at 24. Indeed, an ALJ at a previous hearing also found Mr. Williams "to be credible and very honest." *Id.* at 51. Mr. Williams' credibility was further supported by witness testimony. The occupational therapist testified that during his evaluation, Mr. Williams was truthful and sincere.

*Id.* at 127–29. Mr. Williams' girlfriend stated that "I'm sure he's truthful" regarding whether or not Mr. Williams was experiencing pain. *Id.* at 154. Nevertheless, the Appeals Council found that Mr. Williams' subjective complaints were "not fully credible in light of the objective findings." *Id.* at 7.

This court has stated previously:

> [W]here the Secretary, acting through the Appeals Council, overturns a decision of the ALJ granting benefits, and, in so doing, differs with the ALJ's assessment of witness credibility, the Secretary should fully articulate his reasons for so doing, and then, with heightened scrutiny, we must decide whether such reasons find support in the record.

*Fierro v. Bowen,* 798 F.2d at 1355; *see Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir. 1978).

The Appeals Council's decision reveals no explanation for its contrary assessment of Mr. Williams' credibility but only states that it had "considered the claimant's complaints of pain.... [T]he medical signs ... do not reveal a condition capable of producing disabling pain." Record, vol. 2, at 6. On appeal, the Secretary simply argues that the same factors that justify a finding of nondisability—clinical findings, daily activity, and type of medication used—also support a determination that Mr. Williams was not credible. There is no further indication in the record or in the Secretary's arguments of the reasoning process used. Furthermore, since the Appeals Council did not enter a finding regarding Mr. Williams' pain, it is not clear whether subjective statements of pain were given *any* weight.

Once an objective medical basis for the existence of pain has been shown, subjective evidence must be given at least some weight and cannot be disregarded or minimized into nonexistence. Indeed, "the severity of pain is inherently subjective.... If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all." *Luna v. Bowen,* 834 F.2d at 165. A medical finding itself is based upon more than objective

test results and includes a physician's evaluation of observations and reported patient history. *Nieto v. Heckler*, 750 F.2d 59, 61 (10th Cir.1984). Furthermore, all evidence, objective as well as subjective, may be vulnerable to credibility problems. For example, the degree to which medical conditions are accurately identified or portrayed by particular laboratory tests and medical findings can vary considerably. The reports of physicians and other health providers may conflict, even when examining the same medical data. No less are subjective statements by witnesses subject to varying interpretations.

However, subjective evidence is partially amenable to an assessment of credibility through objective factors.

> The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.

*Beavers v. Secretary*, 577 F.2d at 387; *see Luna v. Bowen*, 834 F.2d at 166. Therefore, special deference is traditionally afforded a trier of fact who makes a credibility finding. *Beavers v. Secretary*, 577 F.2d at 387. "[W]here the ALJ has observed the claimant's condition and demeanor, his finding that ... complaints of pain are credible may undercut the substantiality of the evidence to support the Secretary's contrary decision." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986).

The record here is silent as to how much weight, if any, was given by the Appeals Council to subjective statements regarding Mr. Williams' pain, and scanty as to why certain factors were deemed sufficient to overcome the ALJ's observations and evaluations regarding Mr. Williams' credibility. In the absence of any clearly articulated reasoning, we conclude that the record does not support the Appeals Council's finding that Mr. Williams was not credible. Therefore, the ALJ's assessment that Mr. Williams was fully credible must stand; and Mr. Williams' subjective statements should be given full weight. *See id.; Frey*

*v. Bowen*, 816 F.2d at 515–16. Ascribing full credibility to Mr. Williams' complaints of disabling pain, we must examine the record to determine the effect of Mr. Williams' pain on his ability to perform light and sedentary work.

Impairments of the musculoskeletal system, including disorders of the spine, are established through detailed history, physical examinations, x-rays, 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00(B) (1986), and the use of specific findings, such as "pain, muscle spasm, and significant limitation of motion in the spine" and "appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." *Id.* at § 1.05(C). Evidence of associated pain consists not only of "medically acceptable clinical or laboratory diagnostic techniques, which show ... anatomical, physiological, or psychological abnormalities ... [but also] statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with medical signs and findings." Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(1), 98 Stat. 1794, 1799.

Mr. Williams "reported significant pain and limitations of motion as early as 1981." Record, vol. 2, at 23. The ALJ received evidence from the treating physician that Mr. Williams

> has a long history of degenerative disc disease of the cervical spine.... Despite ... courses of corrective surgery ... the claimant has not had significant relief from pain and that his physical activity was very limited.... [A]ny lifting aggravated the claimant's discomfort and that the prognosis for improvement in his symptoms was poor.... [S]everal neurological abnormalities were found during clinical examinations of the claimant and that he had significant limitations of motion.... In addition, x-rays of the claimant's upper spine disclosed degenerative changes. Obviously, the objective medical evidence of record supports the existence of a severe musculoskeletal impairment which could cause the type of pain the claimant alleges

. . . .

*Id.* Repeated references to Mr. Williams' chronic pain are found in medical records and reports. *Id.* at 263–344 *passim.* The ALJ noted that recent treatment records and an occupational therapist's report indicated that Mr. Williams' significant "pain and limitations of motion have not improved since 1981." *Id.* at 23. The occupational therapist's report further revealed that Mr. Williams' "muscle strength in his biceps, triceps and pectorals were 50 percent or less." *Id.* Although Mr. Williams could manipulate objects with his hands, the occupational therapist expressed the opinion that Mr. Williams "would be able to lift 10 pounds only with great difficulty" and "could sit for only 10 minutes at one time and stand for only 20 minutes." *Id.* These findings support Mr. Williams' complaints of disabling pain.

In contrast, the Appeals Council concluded that "the medical signs, including x-ray evidence and neurological examinations, do not reveal a condition capable of producing disabling pain." *Id.* at 6. The Appeals Council noted that upon hospital admission in 1982 for pain control and alcohol withdrawal, Mr. Williams' neck pain was described as "mild" and that he was taking a "mild amount of pain medication when discharged." *Id.* at 5. The Appeals Council also noted that Mr. Williams lives alone; drives short distances to the store every day; and performs household chores, albeit with difficulty. *Id.* at 6.

"[T]wo [claimants] with the same impairment may be affected to totally differing degrees." *Luna v. Bowen,* 834 F.2d at 165. "[A]n impairment likely to produce *some* ... pain may reasonably be expected to produce *severe* ... pain in a particular claimant." *Id.* at 164. Persistent attempts to find relief from pain, use of pain medications, and the possibility of psychological disorder that combine with physical problems are all relevant indicators of pain. *Id.* at 165–66. Mr. Williams repeatedly sought medical relief from pain and underwent

two surgeries of the cervical spine for that purpose. He required prescription pain medication at times, even though this medication made him feel "goofy" and caution was necessary because of his liver damage. Record, vol. 2, at 339; *cf. Lovejoy v. Heckler,* 790 F.2d at 1117 (claimant may have reasons other than lack of impairment for not seeking or taking medication); *Brown v. Bowen,* 801 F.2d 361, 363 n. 2 (10th Cir.1986) (claimant had not seen a physician for about three years prior to an unfavorable ALJ's decision and no longer took prescription pain medication). Additionally, the treating physician noted that Mr. Williams consumed alcohol "in an attempt to cut down [on] his pain, even though it made him quite ill." Record, vol. 2, at 263.

It is clear from the record that the evidence does not support the Appeals Council's conclusion that the pain Mr. Williams suffers as a result of his musculoskeletal impairments does not significantly affect his ability to do light and sedentary work. We need not decide, however, whether the evidence reveals that Mr. Williams' pain, considered alone, is disabling. The ALJ did not find Mr. Williams disabled on the basis of pain alone but in combination with his alcohol-related problems. *Id.* at 24. Similarly, Mr. Williams' treating physician was of the opinion that Mr. Williams' chronic pain and alcohol problems were inseparable, stating:

> I have felt that he was 100% disabled [since his last neck surgery on 10/8/81], as a result of several things. One of them is his chronic addiction to alcohol. In part, that has been fueled by his chronic pain. He has told me on numerous occasions, that if he drinks, he has less pain. Therefore, I think it is impossible to separate out his alcoholism from his chronic pain syndrome.

*Id.* at 344. Since the Appeals Council concluded that Mr. Williams was not prevented from performing the full range of light and sedentary work on a sustained basis despite all of his impairments,[5] we examine

---

5. The Secretary is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(C) (Supp. III 1985); *see Anderson v. Heckler,* 805 F.2d 801, 805 (8th Cir.1986) (record must show combined condi-

the record to determine whether the evidence supports the conclusion that Mr. Williams' combined impairments are not disabling. As mentioned, Mr. Williams contends that the Appeals Council erred in evaluating the seriousness of his alcohol problem as it impacts on his ability to do light and sedentary work.

### B.

References to Mr. Williams' alcoholism are sprinkled throughout his medical records and reports. Mr. Williams has peripheral neuropathy, seizures, and liver damage secondary to alcoholism. He has been hospitalized for detoxification and has had Antabuse prescribed to attempt control of his drinking. The medical records indicate that Mr. Williams' alcohol consumption varies, but it has been reported as high as one-half gallon of bourbon every three days. *Id.* at 273. According to the treating physician, Mr. Williams "has significant problems with alcoholism and he has been treated but to no real avail." *Id.* at 311. The ALJ, in applying a standardized psychiatric review technique checklist (Checklist), found Mr. Williams to be suffering from alcoholism and the secondary effects of medication with functional limitations that are "marked," "constant," or "repeated." *Id.* at 32–33.

The Appeals Council observed, however, that Mr. Williams does not drink heavily on a continual basis and that during three hospitalizations between May 1982 and January 1986, Mr. Williams' liver inflammation subsided and his grand mal seizures were controlled. *Id.* at 6. The Appeals Council noted that Mr. Williams was not taking anticonvulsant medication when the seizures occurred. Using the same Checklist, the Appeals Council found that Mr. Williams has an unspecified substance addiction disorder with associated physical changes but that these physical changes are not severe or persistent and that, accordingly, his functional limitations are "slight" or "seldom," occurring only "once or twice." *Id.* at 15–16. The Appeals

Council concluded that "manifestations of alcohol abuse have not imposed persistently severe limitations on the claimant's abilities to perform work-related activities for extended periods." *Id.* at 6.

The contrasting conclusions of the ALJ and the Appeals Council may in part reflect differing views as to whether alcoholism alone can be a disabling condition. *See Ferguson v. Heckler,* 750 F.2d 503, 505 (5th Cir.1985) (alcoholism may constitute a disability if a claimant is addicted, has lost the ability to control alcohol use, and is prevented from engaging in substantial gainful employment); *Johnson v. Harris,* 625 F.2d 311, 313 (9th Cir.1980); *Hicks v. Califano,* 600 F.2d 1048, 1051 (4th Cir. 1979); *Lewis v. Califano,* 574 F.2d 452, 455–56 (8th Cir.1978); *cf. LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 842 (6th Cir.1986) (inability to control alcohol intake plus serious interference with day-to-day activities necessary for disability based upon alcoholism alone). Also, in contrast to the ALJ's Checklist, the Appeals Council's Checklist indicates that the Appeals Council evaluated the secondary effects of alcoholism as separate disorders. Mr. Williams, however, is not seeking a disability determination based on alcoholism alone or any single secondary disorder.

The Appeals Council's Checklist consists solely of boxes checked to indicate conclusions. "Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Frey v. Bowen,* 816 F.2d at 515; *see Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir.1986); *Green v. Schweiker,* 749 F.2d 1066, 1071 n. 3 (3d Cir.1984). Furthermore, the opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. *Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir.1987). Thus, to the extent that the Appeals Council's

tions received full consideration); *Bowen v. Heckler,* 748 F.2d 629, 634, 635 n. 1 (11th Cir.

1984) (evaluation of combined effect must be more than perfunctory).

Checklist is inconsistent with the medical records and reports and unfairly discounts the weight of Mr. Williams' alcohol addiction disorder by fragmenting its effects, the Checklist and its resulting conclusions cannot stand. Viewed in this light, the evidence in the record reveals the seriousness of Mr. Williams' alcohol-related disorders. The record also reveals that these impairments, together with Mr. Williams' pain, are disabling.

In December 1981, Mr. Williams was hospitalized following two grand mal seizures. Record, vol. 2, at 23. Mr. Williams was again hospitalized in 1983 following a seizure associated with drinking; he complained of "progressive weakness in his legs and numbness in his feet.... This has progressed to the point that he has fallen down several times and finds it difficult to walk now." *Id.* at 288. Mr. Williams' treating physician found muscle wasting in the upper extremities and diminished motor strength due to loss of muscle mass in the lower extremities. *Id.* at 287.

In November 1984, Mr. Williams was admitted to the hospital, reporting that "because of leg weakness [he was] forced to crawl around at home." Brief of Appellant, exh. 1. Upon examination, the physician found that Mr. Williams had a "mild diffuse weakness of the legs bilaterally, as well as a less[er] degree of weakness of the arms proximally.... Gait and station—he walks with a wide based unsteady gait." *Id.* The physician noted that Mr. Williams awoke the day before his hospitalization "to find he was unable to elevate his left wrist." *Id.* The physician stated that it was conceivable that Mr. Williams sustained a "compression neuropathy of the radial nerve or possibly even contused it during the seizure," as an overlay to his diffuse peripheral neuropathy. *Id.*

The occupational therapist reported in January 1986 that Mr. Williams had upper body weakness at "50% normal or less," "low tone," and "wasting"; he became very dizzy when touching his toes and he "demonstrated poor balance when carrying load five feet from table to table." Record, vol. 2, at 341–42. The occupational thera-

pist concluded that "[t]he greatest limiting factor for occupational consideration is his poor sitting and standing tolerance. Because of this, and chronic pain and muscle weakness, this gentleman would be unemployable in his condition." *Id.* at 342; *cf. Walker v. Bowen,* 826 F.2d 996 (11th Cir. 1987) (serious foot injury, pain, and stress-related conditions may be sufficient to constitute a disability); *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir.1984) (if "a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling").

In 1982, the treating physician observed that Mr. Williams "needs to be rehabilitated, and if possible, get a job that does not require heavy lifting or require him putting his head in unusual positions." Record, vol. 2, at 282. In 1983, the treating physician stated that Mr. Williams "may have the ability to return to some type of gainful employment at some point in the future, but I don't think that he will be able to go back to work as a diesel mechanic." *Id.* at 284. However, several months following Mr. Williams' subsequent hospitalization, this same physician stated that Mr. Williams "has not been able to be rehabilitated by vocational rehabilitation. He has not found any type of employment that he can tolerate. As far as I'm concerned, because it is a chronic pain situation, he is permanently disabled." *Id.* at 309. Thereafter, the physician consistently refers to Mr. Williams as "permanently disabled" or "100% disabled," *id.* at 314, 317, 326, 344, due to his "increasing problems." *Id.* at 325.

Substantial weight is afforded the opinions of a claimant's treating physician. *Byron v. Heckler,* 742 F.2d at 1235. While the conclusion of a treating physician does not direct a finding of "disabled" or "non-disabled," 20 C.F.R. §§ 404.1527, 416.927 (1986), it cannot be disregarded absent a showing of "specific, legitimate reasons." *Byron v. Heckler,* 742 F.2d at 1235. The Secretary's complaint that the opinions of Mr. Williams' treating physician are brief, conclusory, and unsupported by medical ev-

idence is itself unfounded. The physician's statements and opinions are contained within more than 80 pages of medical evidence, including hospital records, laboratory tests, and medical evaluations spanning a period of over seven years. When viewed as a whole, this evidence supports the treating physician's position regarding Mr. Williams' physical and mental condition; and they are essentially uncontradicted by medical evidence from any other examiner. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984).

Relying on the treating physician's opinions, Mr. Williams' complaints of pain, and the medical evidence, the ALJ noted the effect of Mr. Williams' impairments:

> [T]he claimant is an alcoholic and he has some liver damage and peripheral neuropathy. The claimant's drinking, in combination with the medication he takes for his severe pain and seizures, would make it impossible for him to concentrate on basic work-related functions. It is unlikely that he could perform even unskilled tasks on a sustained basis. The claimant would have difficulty understanding, retaining and following instructions and he would be unable to handle the pressures customary in a routine work setting.... [T]he claimant drinks excessively as a result of his pain.... [H]is activities and abilities ... are severely limited.

Record, vol. 2, at 23–24.

#### IV.

■ The record reveals that Mr. Williams has serious exertional limitations as a result of the chronic pain stemming from his musculoskeletal impairments and the problems associated with his chronic alcoholism. The Secretary's finding that Mr. Williams has the exertional capacity to perform light and sedentary work on a regular basis, despite his impairments, is not supported by substantial evidence. Light work may include frequent lifting or carrying of 10–pound objects and may require a good deal of walking, standing, and sitting. Even sedentary work involves lifting 10–pound objects and occasional lifting

or carrying of smaller articles and requires constant sitting and a certain amount of walking and standing. It is evident from the record that Mr. Williams' impairments prevent him from lifting objects, from walking, standing, or sitting on a regular basis, and from even maintaining his balance for any length of time. It is also evident that Mr. Williams has significant motor and reflex loss, muscle weakness, and limitation of motion. Although Mr. Williams is not precluded from all activity, "limited activities in themselves do not establish that one can engage in light or sedentary work activity." *Talbot v. Heckler*, 814 F.2d at 1462 (short-term work projects and intermittent driving was not equivalent to gainful activity); *Broadbent v. Harris*, 698 F.2d at 413 (yard work, household tasks, car repairs, occasional car trips are not considered regular or prolonged activity). Mr. Williams lives in an apartment owned by his father and performs small jobs such as putting washers in sinks, collecting rent, and keeping records on his father's other two apartments. Record, vol. 2, at 118–22. However, Mr. Williams has others do most other maintenance chores. *Id.* at 119. Mr. Williams prepares TV dinners but does not "do too much housework." *Id.* at 115. He participates in no regular recreational activities other than watching TV and visiting his girlfriend. *Id.* at 115–17. There is no support in the record that Mr. Williams' limited activities somehow demonstrate an ability to perform the tasks of any RFC category on a regular basis.

After observing the witnesses, hearing their testimony, and reviewing the evidence, the ALJ concluded: "In short, the claimant's combination of physical, neurological and mental impairments prevents him from performing even unskilled sedentary work and it is clear he cannot do any jobs existing in significant numbers in the national economy." *Id.* at 24. The ALJ further concluded that "from an exertional standpoint, the claimant would have difficulty performing even sedentary work on a sustained basis." *Id.* at 23. The evidence in the record accords with the ALJ's con-

clusion that Mr. Williams' impairments are disabling.

█ Additionally, even if Mr. Williams were exertionally capable of performing light or sedentary work, the Appeals Council erred in conclusively applying the grids. It is evident from the record that Mr. Williams' impairments have resulted in significant nonexertional limitations, as the ALJ found, *id.* at 19–25, including epilepsy with resulting seizures; inability to control alcohol intake; sensory impairments; dizziness and disorientation; mental impairments such as the inability to concentrate on basic work functions, to understand, retain, and follow instructions, and to handle the pressures customary in a routine work setting; constant need for medication and resulting drowsiness; and significant postural limitations. There is substantial evidence that these nonexertional limitations significantly limit Mr. Williams' ability to do work on a sustained basis for which he may be exertionally capable and prevent him from performing the full range of jobs requiring light or sedentary work strength capabilities. When grids are applied without adequate consideration of nonexertional limitations, courts do not hesitate to overturn the Secretary's finding of nondisability. *Channel v. Heckler,* 747 F.2d at 581.

We find insubstantial support in the record for the Secretary's finding that Mr. Williams could perform a full range of light and sedentary work and substantial evidence that he could not. Where the burden is on the Secretary at step five of the disability evaluation process to produce evidence that Mr. Williams can perform other work in the national economy, and the Secretary does not meet that burden and thus does not sufficiently rebut the prima facie case of disability, reversal is appropriate. "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Dollar v. Bowen,* 821 F.2d at 534. The record here fully supports a determination that Mr. Williams is disabled within the meaning of the Social Security Act. Further proceed-

ings would only delay the determination and award of benefits.

Accordingly, we REVERSE and REMAND to the Secretary for the immediate calculation and award of benefits as originally set forth by the ALJ on February 27, 1986. The mandate shall issue forthwith.