Viola A. RICE, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.

Civil Action No. 97–4036–DES.

United States District Court, D. Kansas.

Dec. 2, 1997.

Roger D. Fincher, Bryan, Lykins & Hejtmanek, P.A., Topeka, KS, for Plaintiffs.

Nancy M. Landis, Office of U.S. Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on plaintiff's motion for reversal or remand of the Social Security Commissioner's denial of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* (Doc. 11).

### I. PROCEDURAL BACKGROUND

The Social Security Administration denied plaintiff's application for SSI benefits both initially and on reconsideration. Following a hearing on January 9, 1995, an administrative law judge ("ALJ") concluded that plaintiff was not entitled to SSI benefits under Title XVI because she had not been "disabled" within the meaning of the Social Security Act ("Act") at any time when she met the earnings requirement of the Act, or at any time through the date of the decision.[2]

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for John J. Callahan as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2. For insured status under the Act, an individual is required to have 20 quarters of coverage in the 40–quarter period ending with the first quarter of disability. This is the so-called "earnings requirement." 42 U.S.C. § 416(i)(3)(B) and § 423(c)(1)(B). To be eligible for SSI benefits under Title XVI, plaintiff must establish that she was disabled while her application was pending. 20 C.F.R. §§ 416.330 and 416.335.

On December 9, 1996, the Appeals Council denied plaintiff's request for review. The ALJ's decision thus stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981 and 416.1481 (1996).

## II. FACTUAL BACKGROUND

Plaintiff was born in November 1954 and was forty-one years old at the time of the ALJ's decision. She attended high school through the tenth grade and also completed training to be a certified nurse's aide ("CNA"). Her most recent employment history includes jobs as a CNA and taxicab driver. She left her CNA job in February 1992 due to a back injury, and quit her taxicab-driving job in October 1994 due to back pain.

Plaintiff applied for SSI benefits in July 1993. In her disability report she stated she had been unable to work since February 1992 due to her back injury. She further stated that Allan Holiday, M.D., had restricted her lifting to thirty pounds and advised against any work that required more than light duty. She added that her household chores, which included cooking, cleaning, and doing the laundry, took her longer to complete as a result of her back problem; she went camping and fishing with her husband; she visited with her friends and her children; and she had difficulty driving long distances because she needed to "stop every hour or so." In the report entitled "Activities of Daily Living," submitted in March 1995, plaintiff stated she cooked all meals for the household (although she sometimes needed help carrying pots or getting items from the kitchen cabinet) and washed the dishes but did no other chores around the house. Although she did the grocery shopping twice a month, her husband did all of the lifting and carrying. She said she went fishing for eight hours on weekends.

Plaintiff's medical records show that she fell on her right hip at work in December 1991. In January 1992, she sought treatment from William Tiemann, M.D., who found that although her sacral area was tender to palpation and she had "soft tissue tenderness around [her] hip, she had full passive range of motion." Noting that an x-ray was negative, Dr. Tiemann diagnosed a hip contusion and myositis (muscle inflamma-

tion). On February 7, 1992, he made similar findings and suggested plaintiff could return to "full work" the following week. Six weeks later he referred her for physical therapy.

Plaintiff continued complaining of hip pain in April and May 1992, and Dr. Tiemann referred her to Dr. Holiday for an orthopedic examination. Dr. Holiday found that her gait, deep tendon reflexes, motor strength, and vascular exam were all normal; and she had a negative straight-leg-raising test, "no pain with percussion[, and] ... a full range of motion of her hips, knees and ankles." Dr. Holiday concluded she might have "a chronic lumbosacral strain without any signs of radiculopathy."

When Dr. Holiday next saw plaintiff in August 1992, he noted that she was "making slow progress but [was] feeling much better." While she had "some pain with certain exertional activities" and "an occasional cramp in the evening," she was "not taking any medications." She reported that caring for her child and another child was "occupying a lot of her time." Her examination was entirely normal, and Dr. Holiday "encouraged her to begin light duty work." By January 11, 1993, her condition had not changed.

Plaintiff also had two consultative examinations arranged by the State Disability Determination Service. In September 1993, Henry Kanarek, M.D., found that plaintiff had some reduced range of motion due to pain but no muscle spasm and no "asymmetrical reflex, sensory, or motor findings to suggest nerve root irritation." Yong Kim, M.D., examined plaintiff on May 3, 1995. Although his attempt to examine the range of motion of her spine "was impossible in that she would hardly bend to move her back to any significant degree, stating that she [was] unable to do so because of severe pain," her neurological examination was "essentially normal." Dr. Kim concluded that plaintiff's complaints were "somewhat exaggerated and some of the complaints [were] somewhat inconsistent." In addition, he reported that she said she could "barely read and write" and could not "do any math"; he formed the impression that she was "mildly retarded."

As indicated above, plaintiff also underwent several psychological evaluations. In

March 1990, a state court judge referred plaintiff and her husband to Pawnee Mental Health Services for a psychological evaluation prompted by child custody litigation. The "Shipley Institute of Living Scale" indicated that plaintiff's intelligence was in the borderline range. The evaluator also diagnosed her as having a borderline personality disorder.

Plaintiff was reevaluated at the Pawnee Mental Health Services clinic in December 1990, following the removal of her children from her home. This time she was given diagnoses of "adjustment disorder with depressed mood" and "personality disorder, [not otherwise specified]." Her evaluator concluded that plaintiff's "judgment and insight appear[ed] to be seriously impaired."

John H. Fajen, Ph.D., performed another psychological examination of plaintiff in August 1993, again in connection with a custody determination. Dr. Fajen diagnosed only a personality disorder, and ranked her Global Assessment of Functioning ("GAS") at 60. He also noted that plaintiff's problems were "not readily responsive to psychological counseling, and she [did] not appear to be motivated to voluntarily undertake such a process . . . ."

Plaintiff also underwent a consultative psychological assessment by David R. Mouille, Ph.D., on April 25, 1995. He diagnosed dysthymia (a depressive disorder) and also ranked her GAF at 60. Dr. Mouille further concluded that plaintiff could "maintain adequate relationships with co-workers and supervisors[,] . . . understand and perform simple tasks in an average amount of time[,] . . . sustain concentration over an 8 hour day in at least routine activity[,] . . . [and] keep a work schedule with average performance demands."

At the hearing on January 9, 1996, plaintiff testified that on the average she could sit about a half hour before getting "numb from [her] waist down"; stand about fifteen or twenty minutes before her "knees g[a]ve out on her"; walk only about twenty-five feet due to pain going from her back into her feet; and lift "not more than 25 pounds." She said that after getting up in the morning and getting dressed (with her husband's help) she would sit for awhile and then go back to bed

for an hour or two because her "energy [was] drained." When cooking she would "put stuff on the stove" and then walk off and forget about it. She no longer went grocery shopping, did the laundry, or vacuumed her house, and had not driven a car since October 1995. She further complained of "black out spells" that occurred "[m]aybe once a week" which caused her to "go wild" and "fall to the floor"; she said that these began about a year earlier.

Additional facts are set forth as needed throughout the court's discussion.

## III. STANDARD OF REVIEW

The Commissioner's determination is binding on this Court if the record as a whole contains substantial evidence to support the ALJ's determination. *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992). Substantial evidence is more than a scintilla; it is such adequate relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir.1991). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington*, 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

## IV. DISCUSSION

■ To qualify for benefits under the Social Security Act, a claimant must establish that she meets the insured status requirements and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C.A. § 423(d)(1)(A) (1995). The Act provides:

An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A). *See* 20 C.F.R. § 416.905(a). The claimant has the burden of establishing disability under the Act. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The burden then shifts to the government to show the claimant retains the ability to perform other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988)(discussing five-step disability test set out in 20 C.F.R. §§ 404.1520, 416.920). When reviewing a claim for Social Security benefits, an ALJ must follow the same five-step procedure. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). If the ALJ finds at any point in the process that a person is disabled or not disabled, the review ends. *Id.*

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Williams,* 844 F.2d at 750–52. If not, the ALJ continues to step two and considers whether "the claimant has a medically severe impairment or combination of impairments." *Id.* At step three, the ALJ determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. p, App. 1 (1996), which are deemed so severe as to preclude substantial gainful activity. *Id.* If the ALJ finds no equivalency, he then decides whether the impairment prevents the claimant from continuing his past relevant work. *Id.* If so, the ALJ proceeds to the final step and determines whether the claimant has any

Residual Functional Capacity ("RFC") to perform other work available in the national economy, considering such additional factors as the claimant's age, education, and past work experience. *Id.*

In applying this analysis to plaintiff's case, the ALJ found at step three that plaintiff did not have an impairment or combination of impairments meeting or equaling the level of severity of any impairment described in the "Listing of Impairments." However, proceeding to step four, the ALJ noted that plaintiff's impairments prevented her from returning to her past relevant work. The ALJ also noted the burden then shifted to the Commissioner at the final stage of the five-step sequential analysis to show there were jobs available that plaintiff could perform which exist in significant numbers in the regional or national economy. At step five, the ALJ found, based on the vocational expert's testimony, that a significant number of jobs existed in the national economy which plaintiff would be capable of performing. The ALJ identified the occupation of assembly worker, which he found existed in significant numbers in both the relevant regional and national economies. He therefore concluded that plaintiff was not disabled and not entitled to disability benefits.

█ Plaintiff contests the ALJ's determination for several reasons. She first contends there is no evidence to support the ALJ's assessment of her intelligence functioning as "borderline." According to plaintiff, "[her] characteristics more resemble a person of significant psychological impairment than simply a person with borderline to low average intelligence." The court disagrees that the characteristics listed by plaintiff in her brief necessarily demonstrate psychological impairment rather than "borderline to low average intelligence." Nevertheless, even if plaintiff were correct, this would not affect the court's conclusion because the ALJ expressly considered plaintiff's claim that mental impairments prevented her from working.

Where a claimant presents evidence that a mental impairment prevents her from working, "the [Commissioner] must follow the procedure for evaluating mental impairments

set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. U.S. Dept. of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir.1995)(citing *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir.1993)). This procedure requires the Commissioner to first determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. *Cruse*, 49 F.3d at 617. The Commissioner must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. *Id.* The Commissioner is then required to record her conclusions by preparing a document called a Psychiatric Review Technique Form ("PRT form") that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. *Id.* At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. *Id.* This process is substantially similar for evaluating mental impairments resulting in a claim for SSI benefits. *See* 20 C.F.R. § 416.920a.

In this case, the ALJ completed the PRT form without assistance from a medical advisor. Under Part A, he found evidence of the following: affective disorder, based on psychologist Mouille's diagnosis of Dysthymia; mental retardation, based on Dr. Kim's impression that plaintiff was mildly retarded; and personality disorder, based on psychologist Fagen's diagnosis of personality disorder—not otherwise specified.

To meet the listing requirements under the Part B criteria regarding the severity of the impairment, the condition or impairment must result in at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) frequent deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or 4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which

may include deterioration of adaptive behaviors). 20 C.F.R. § 416.920a(b)(3). The ALJ concluded that plaintiff had only "slight" restrictions on her activities of daily living and "slight" difficulties in maintaining social functioning, "often" had deficiencies of concentration, persistence or pace, and "never" had episodes of deterioration or decompensation in work or work-like settings. The ALJ therefore concluded that her problems did not impose functional limitations of disabling severity.

The record must contain substantial competent evidence to support the conclusions recorded on the PRT form. *Cruse*, 49 F.3d at 617 (citing *Washington*, 37 F.3d at 1442). Moreover, if the ALJ prepares the form himself, he must "discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form." *Id.* The court finds the ALJ's conclusions are supported by substantial evidence and the ALJ sufficiently discussed the evidence he considered in reaching the conclusions expressed on PRT form.

■ Plaintiff also contends that her complaints of disabling back pain were improperly discounted. Plaintiff testified at the administrative hearing that she would stop between taxicab-routes and exit her vehicle at least once every half hour for ten minutes or so to relieve the pain in her back. She also testified that her back pain forced her to seek relief by laying back in the seat of her taxicab approximately four or five times each day for fifteen to thirty minutes at a time.

The ALJ must consider a claimant's complaints of pain once he has established by objective medical evidence that she suffers from a pain-producing impairment, and there is a loose nexus between that impairment and her subjective allegations of pain. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995)(citing *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir.1987)). Because those conditions are met here, the factors to be considered by the ALJ include the following: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activi-

ties, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Id.* at 391 (citation omitted).

Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true. *Brown v. Callahan,* 120 F.3d 1133, 1135 (10th Cir.1997). A credibility determination is left to the ALJ as the trier of fact, and the ALJ's credibility findings are traditionally given particular deference. *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir.1988) (citing *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978)). The ALJ's credibility findings must be affirmed if they are supported by substantial evidence on the record as a whole. *See Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990).

In the present case, the ALJ considered plaintiff's complaints of back pain, but concluded they were not credible. In drawing this conclusion, the ALJ considered relevant medical and non-medical evidence. For example, the ALJ noted that none of plaintiff's treating physicians indicated that she was unable to work. This fact alone might be considered substantial evidence for the ALJ's decision, *see Ray v. Bowen,* 865 F.2d 222, 226 (10th Cir.1989), but the ALJ also considered additional factors.

The ALJ further noted that plaintiff was taking no prescription medication at the time of the hearing. Plaintiff's use of only non-prescription medications to relieve pain is inconsistent with her allegations of disabling pain and tends to support the ALJ's credibility finding. *See, e.g., Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988) (non-aggressive treatment inconsistent with severe disability allegations); *Watson v. Shalala,* 1994 WL 605997 (D.Kan.1994). Likewise, the ALJ recognized that Dr. Kim's impression was that plaintiff exaggerated her complaints. This also tends to support the ALJ's credibility finding. *See, e.g., Rappoport v. Sullivan,* 942 F.2d 1320, 1322–23 (8th Cir. 1991).

■ Plaintiff further argues that the ALJ incorrectly characterized her level of impairment in his hypothetical to the vocational expert by failing to account for her asserted need to periodically lie on her back during her work day. When the ALJ did properly account for this restriction, plaintiff adds, the vocational expert stated that she would be unable to perform any gainful employment. Plaintiff is correct in stating that the vocational expert indicated plaintiff would have difficulty performing any gainful employment if her testimony regarding her back pain were accepted as true. However, the ALJ determined plaintiff's subjective complaints of back pain lacked credibility, a finding supported by the record. Accordingly, the ALJ was not bound by that portion of the expert's opinion which was based on accepting plaintiff's testimony as true. See, e.g., *Kelley v. Chater,* 62 F.3d 335, 337–38 (10th Cir.1995). The hypothetical which elicited the response upon which the ALJ based his decision included those impairments which the ALJ found to be properly supported by the record as a whole. Because the hypothetical was properly formulated, the expert's testimony that jobs existed which plaintiff could perform, constitutes substantial evidence supporting the ALJ's finding. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996). This finding may be overturned only if it is overwhelmingly contradicted by other evidence, which is not the case here.

Since the ALJ's findings are supported by substantial competent evidence from the record as a whole, plaintiff's motion will be denied.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's motion seeking reversal or remand of the Social Security Commissioner's denial of Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* (Doc. 11) is denied.