25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jimmie PHILLIPS, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-6257.
 United States Court of Appeals, Tenth Circuit.
 May 2, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Claimant Jimmie Phillips appeals an order of the district court affirming the Secretary's denial of disability and disability insurance benefits. Claimant complains that the Secretary applied an incorrect legal standard when evaluating the opinion of his treating physician. We exercise jurisdiction under 42 U.S.C. 405(g) and reverse.
 
 I.
 
 4
 Claimant, a welder, suffered injuries to his left ankle, foot and toes, left elbow, neck, and mid-back on January 16, 1986, when part of a drilling rig fell on him. He had surgery on his left foot and left arm in July 1986, and a second surgery on his left arm in December 1986. Despite the surgeries, claimant continued to have problems with his arm and foot. Additionally, he complained of almost constant pain in his neck and mid and lower back, with radiating pain in his chest and right hip. X-rays of his spine in December 1986 showed minor degenerative changes, as well as nerve root compression of T-4. Claimant was given nonaddictive pain medication and muscle relaxants. He continued to complain of severe back pain. In December 1987, his treating physician, Dr. Morris, noted that "[b]ecause of continued symptoms, one wonders if somatization does not play a significant role." Appellant's Supp.App. at 218.
 
 
 5
 Claimant applied for benefits, alleging disability dating from his injury due to problems with his back, neck, arms, legs, feet, and chest. Claimant was sent to Dr. Drell for a consultative psychiatric evaluation. Dr. Drell observed that claimant showed no pain during the examination, which lasted more than an hour, and noted that claimant's attitude "was that of chronic complaining about people and about everyone he has contact with." Id. at 230. Dr. Drell diagnosed claimant with somatization disorder and mild paranoid disorder. He opined that claimant "can work but is too paranoid around people." Id. at 231. Claimant was seen by a second consultative psychiatrist, Dr. Calenzani, who diagnosed him with alcoholism, polysubstance abuse, dysthymia, and chronic pain syndrome. Dr. Calenzani noted that claimant has a tendency to exaggerate. Id. at 327-29.
 
 
 6
 A consultative physician, Dr. Sullivan, evaluated claimant's physical problems and found that claimant had normal range of motion in his back and neck. Id. at 234. Another consultative physician, Dr. Cunningham, though, found that claimant had decreased range of motion of the lumbar spine. Id. at 321-22.
 
 
 7
 Claimant submitted treatment notes and letters from Dr. Blaschke, who began treating claimant in June 1989. On initial examination, Dr. Blaschke diagnosed claimant with chronic pain syndrome, but was "uneasy if there is underlying organic disease." Id. at 304. Subsequent x-ray studies of the spine showed "definite arthritic changes with hypertrophic lipping and spurring at multiple levels throughout the lower dorsal spine," id.; irregularity in the upper dorsal spine "of the vertebral end plates with scalloping and sclerotic changes," id. at 305; and "abnormal, sclerotic and irregular" intervertebral disc spaces at 2/3, 3/4, and 4/5, id. Dr. Blaschke diagnosed claimant with "generalized osteoarthritis with primary involvement of his dorsal and lumbar spine area where he has multiple levels of degenerative disc disease, hypertrophic lipping and spurring, and a stated diagnosis of DISH (diffuse idiopathic skeletal hyperostosis)." Id. at 317. In Dr. Blaschke's opinion, claimant's "pain symptoms are strictly on the basis of degenerative joint disease and generalized osteoarthritis rather than inflammatory arthritis per se. Thus, it is unarguable that this patient has an organic basis for chronic pain syndrome." Id.
 
 
 8
 Dr. Blaschke treated claimant with pain medication and anti-inflamatory drugs. He also recommended a second surgery on claimant's left foot, which claimant underwent in November 1989. In January 1990, Dr. Blaschke noted that claimant continued to complain of chronic pain in the axial skeleton, not relieved by medication. Claimant reported "many other symptoms that aren't as easy to understand including burning dysesthesias in his throat, chest and stomach area, and he also complains of visual and hearing loss. [He] is depressed and he is frank in acknowledging this in that he is psychologically depressed." Id. at 316. Dr. Blaschke noted that a psychological disability would render claimant "disabled as much [a]s if he were physically disabled. The [patient's] history speaks for itself in that for one reason or another he has been unable to physically perform gainful employment in a way that would be normal and typical for a patient in his situation." Id. At some point, Dr. Blaschke prescribed Amitrptyline, an antidepressant that also helped claimant sleep.
 
 
 9
 In March 1990, Dr. Blaschke reviewed Dr. Drell's psychiatric report and assessed claimant's ability to return to work, in light of his physical and mental problems:
 
 
 10
 Dr. Drell did state in 1988 that the pt. had a somatization disorder and a paranoid disorder which was mild. I presume these psychiatric judgmens [sic] are correct and I have no problem with this but I feel we should look at the fact that these psyhiatric [sic] problems combined with his srthritis [sic] problems of the spine, which is incurable in a sense, are in effect the patient's chief disability explanation. We stated originally that the pt. had a chronic catastrophic intractable pain syndrome and I still feel this is the proper classification of the patient's arthritis.
 
 
 11
 Unlike Dr. Drell, I do not feel the pt. can work at any job because of this and I do not feel that there is any particular treatment program, after 3-4 years, thst [sic] will return him to work. It is my opinion that because of the combination of the factors of the arthritis condition in his spine, and the psychological profile in this patient that we hve [sic] a patient who is incapacitated.
 
 
 12
 Even if Social Security benefits are not granted to him, he will not be able to work because of the reality of the above diagnoses. With this in mind, I have no hesitation in recommending this patient be granted Social Security benefits on a physical and mental disability basis.
 
 
 13
 Id. at 317-18. Dr. Blaschke made similar observations in January 1991:
 
 
 14
 [I]n my opinion the psychological aspects of this patient's case as outlined by Dr. Drell, his psychiatrist, are of overriding importance rather than the objective abnormalities. If patients are in pain, and they have a chronic catastrophic intractable pain syndrome, there is nothing that can be done other than the type of medications he is doing and encouragement that will render him more effective in his work condition.
 
 
 15
 In Mr. Phillips' case, since it has been four years since he has had productive employment, regardless of decisions that are mde [sic], he will never return to productive activity and work.
 
 
 16
 Id. at 331.
 
 II.
 
 17
 An administrative law judge (ALJ), after conducting a hearing, found that claimant is not disabled. The Appeals Council reviewed the ALJ's decision and remanded for further evaluation of (1) the duration and combined severity of claimant's physical and mental impairments, and (2) the effect of claimant's pain on his ability to function. The ALJ conducted a second hearing. Applying the second and third steps of the five-step disability analysis, see Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir.1988)(explaining the five steps), the ALJ found that claimant has a severe somatoform disorder, affective disorder, and diffuse idiopathic skeletal hyperostosis, but prior to May 1, 1991, none of his impairments met a listed impairment. As of May 1, 1991, though, claimant's affective disorder was of such severity that he met 12.04 A and B of the listings. See 20 C.F.R. 404, Subpt. P, App. 1, 12.04. The ALJ found at step four that claimant's impairments prevented him from performing his past job as a welder, and, at step five, claimant retained the residual functional capacity to perform some sedentary jobs, specifically the jobs of blocker/polisher and automatic grinder. The ALJ, therefore, concluded that claimant was disabled as of May 1, 1991, but was not disabled before that date. The Appeals Council denied review and the district court affirmed the denial of benefits.
 
 
 18
 Claimant was denied benefits at step five. "On step five, after the claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir.1993). We must determine whether substantial evidence supports the Secretary's decision. Williams, 844 F.2d at 750. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotation and further citation omitted). If a decision is not supported by substantial evidence, we must reverse. Id. Failure to apply the correct legal standard is also grounds for reversal. Id.
 
 III.
 
 19
 Claimant argues on appeal that substantial evidence does not support the ALJ's determination that he was not disabled prior to May 1, 1991. Specifically, claimant maintains that the ALJ improperly rejected the opinion of his treating physician, Dr. Blaschke, who opined that claimant was disabled from the combined effect of his arthritis problems of the spine and mental problems.
 
 
 20
 The ALJ rejected Dr. Blaschke's opinion that claimant is disabled because Dr. Blaschke
 
 
 21
 admits that this conclusion is not based upon objective physical findings but based upon a psychiatric report by Dr. Drell who had concluded that Mr. Phillips had a mild mental impairment. Therefore, Dr. Blaschke is not stating that Mr. Phillips is disabled based upon his diffuse idiopathic skeletal hyperostosis but based upon Dr. Blaschke's interpretation of Dr. Drell's psychiatric report.
 
 
 22
 Appellant's Supp.App. at 32. The ALJ noted that Dr. Blaschke was not in the best position to determine disability based upon claimant's psychiatric impairments. Also, the ALJ noted that Dr. Blaschke recognized claimant's tendency to magnify pain and even "stated that he was uneasy as to whether there was underlying organic disease to substantiate the claimant's complaints." Id. at 33. The ALJ concluded that, despite claimant's impairments, he retained the capacity to perform sedentary work which does not involve repetitious stooping or bending, or prolonged periods of close interpersonal relationships.
 
 IV.
 
 23
 A treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 404.1527(d)(2); see also Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987)(treating physician's opinion may be rejected if brief, conclusory, or unsupported by medical evidence). The Secretary, though, makes the ultimate decision about whether a claimant meets the statutory definition of disability and does not accord any special weight to the source of an opinion on that issue. 20 C.F.R. 404.1527(e)(1) & (2). Nevertheless, the Secretary must give specific and legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled. See Williams, 844 F.2d at 758.
 
 
 24
 Here, although Dr. Blaschke noted claimant's depression and prescribed an antidepressant that would help claimant sleep, his notes and letters do not indicate that he assessed the nature or severity of claimant's mental impairments. Relying fully on the psychiatric assessment of Dr. Drell, who opined that claimant could work despite his mental impairments, Dr. Blaschke offered his opinion on the ultimate issue of claimant's ability to work, despite mental and physical impairments. Dr. Blaschke attempted to explain the relationship between claimant's mental and physical impairments:
 
 
 25
 Previous x-rays on Mr. Phillips have shown [a] preponderance of these changes in the dorsal or thoracic spine area. In my opinion, as a consequence of this arthritic discomfort, the patient has many complaints of pain in his chest and pain in his dorsal spine area with radiation of pain into his anterior chest wall.
 
 
 26
 Evaluation of this type of arthritic pain is extremely difficult to assess with any degree of accuracy. Particularly in a patient who is depressed, defeated and who has the quality of somatization of his complaints that tend to unconsciously magnify the intensity of the pain.
 
 
 27
 Appellant's Supp.App. at 330.
 
 
 28
 We hold that the ALJ gave inadequate reasons for rejecting Dr. Blaschke's conclusion of disability. Dr. Blaschke treated claimant's chronic pain for more than eighteen months and recognized that precise evaluation of claimant's pain, which unquestionably had an organic basis, was particularly difficult in light of claimant's mental impairments, which, among other things, caused claimant to unconsciously magnify his pain. Dr. Blaschke was not, as the ALJ stated, determining disability solely on the basis of Dr. Drell's psychiatric diagnosis: Dr. Blaschke determined disability based on the combined effect of claimant's mental and physical impairments. His opinion cannot be rejected simply because he, in part, relied upon a medical opinion rendered by a physician outside his area of expertise.
 
 
 29
 Furthermore, contrary to the ALJ's suggestion, Dr. Blaschke's opinion does not contradict Dr. Drell's psychiatric diagnosis. While neither psychiatrist concluded that claimant's mental impairments would prevent him from working, both psychiatrists diagnosed claimant with significant mental impairments and neither purported to evaluate claimant's ability to work in light of the combined effect of his mental and physical impairments.
 
 
 30
 Finally, Dr. Blaschke's statements, questioning whether there was an organic basis for the pain and recognizing that claimant tends to exaggerate his pain, do not provide a legitimate basis in this case to reject Dr. Blaschke's disability determination. Dr. Blaschke made the former statement as an initial observation during claimant's first appointment, before claimant had been x-rayed. Exaggeration of pain, of course, supports claimant's stated diagnosis of somatoform disorder.
 
 
 31
 The government argues on appeal that Dr. Blaschke's opinion is irrelevant in light of claimant's admission that he could stand for forty-five minutes and sit for 1 to 2 hours. These admissions, the government maintains, show that claimant is capable of sedentary work. We disagree. Claimant testified to extensive pain in his upper and lower back, with radiating pain in his chest and legs. Id. at 81. He claimed to have stiffness in his neck and shoulders, numbness in his left elbow, and significant problems gripping with his left hand. Id. at 81, 374, 376-77. Claimant admitted he could grasp a medium-size hammer, but explained that when his hand hurt, his hand would not turn loose and he would have to pry the hammer from his hand. Id. at 376-77. Also, claimant stated that during an eight-hour work day, he would need to lie down for two to three hours to get relief from his pain. Claimant's statements, taken as a whole, fall far short of showing he is capable of sedentary work.
 
 
 32
 The government also argues that claimant must be capable of sedentary work because he does not "regularly require strong pain medications." Appellee's Br. at 18. The level of pain medication is one factor the ALJ should consider when evaluating the credibility of pain testimony. See Thompson, 987 F.2d at 1489. Here, the ALJ found that claimant's pain medication in June 1991 "is not indicative of pain of such severity to be considered disabling prior to May 1, 1991." Appellant's Supp.App. at 29. The ALJ and the government both fail to recognize that the record contains numerous references to claimant's extensive pain medications prior to May 1, 1991.[2] We note that the ALJ gave no other specific reasons for concluding, in blanket fashion, that claimant's testimony was credible only to the extent it was consistent with the ALJ's determination of claimant's residual functional capacity. See Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir.1988) ("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.") (footnote omitted).
 
 
 33
 In conclusion, we hold that the ALJ gave inadequate reasons for rejecting Dr. Blaschke's opinion. The judgment of the United States District Court for the Western District of Oklahoma is REVERSED and REMANDED with directions to remand to the Secretary for further proceedings consistent with this opinion.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 Dr. Cunningham, a consulting physician questioned whether claimant could function in a work setting, given his level of pain medication. Id. at 322