**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KAREN S. WISE,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 04-7035
(D.C. No. 02-CV-484-P)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **HARTZ** , and **BALDOCK** , Circuit Judges, and **BRIMMER** ,** District
Judge.

      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     The Honorable Clarence A. Brimmer, District Judge, United States District
Court for the District of Wyoming, sitting by designation.

Karen Wise appeals from an order of the district court affirming the Commissioner's decision denying her application for Social Security benefits. Ms. Wise filed applications for disability insurance benefits and supplemental security income payments on September 29, 2000. [1] She alleged disability based on anxiety, depression, asthma, and multiple injuries to her body from an automobile accident. The agency denied her application initially and on reconsideration.

On February 7, 2002, Ms. Wise received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that Ms. Wise had the residual functional capacity (RFC) to perform a significant range of sedentary work. The ALJ denied Ms. Wise's application for benefits, concluding that she was not disabled at step five of the analysis because she could perform a significant number of jobs in the national economy. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process for evaluating claims for disability benefits). The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

---

[1] Ms. Wise previously filed applications for disability insurance benefits and social security income payments. The ALJ issued a decision on February 26, 1999 finding Ms. Wise disabled under a closed period from August 29, 1997 to November 17, 1998, but not thereafter. Ms. Wise alleges an onset date of August 29, 1997, but due to the finality of the prior ALJ decision, the relevant time period for these applications begins on February 27, 1999.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). On appeal, Ms. Wise contends that the ALJ erred by failing to properly consider her treating physicians' opinions. We affirm in part and reverse in part.

A treating source opinion is to be given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record . . . ." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (outlining framework for ALJ's controlling weight determination). In considering Ms. Wise's treating physicians, the ALJ lumped together the opinions of Dr. Carpenter and Dr. Houston and rejected them both stating:

> I find Dr.'s Houston and Carpenter's medical source statements and medical consultant review, respectively, to be deficient and without supportive medical documentation. Their pessimistic conclusions were not supported by the objective medical evidence. They provided no clinical signs in support of their conclusion, because none existed. Despite exhaustive diagnostic testing, there is simply no support for functional limitations to the extent alleged and found by these two physicians. The preponderance of the evidence shows that their conclusions are based solely on [claimant's] subjective complaints, which I do not find to be fully credible. As such, I

> decline to give their medical conclusions controlling weight as they
> are inconsistent with the credible evidence of record.

Aplt. App. at 25-26 (internal citations omitted).

Dr. Carpenter

Dr. Carpenter has been Ms. Wise's treating physician since 1978. She completed two medical source statements relating to Ms. Wise's physical impairments. In the first medical source statement completed on December 27, 2000, Dr. Carpenter reported that Ms. Wise was unable to frequently lift and/or carry any amount of weight and that she was occasionally only able to lift and/or carry five pounds. Aplt. App. at 504. In addition, Dr. Carpenter reported that in a typical eight hour work day, Ms. Wise could only stand and/or walk for one hour; stand and/or walk continuously for fifteen minutes; sit for one hour and sit continuously for fifteen minutes. *Id.* Dr. Carpenter also stated that Ms. Wise is required to lie down during the normal work day to manage pain or other symptoms. *Id.* at 505.

Dr. Carpenter's second source statement was essentially the same, with a few exceptions. Dr. Carpenter reported that Ms. Wise was now able to frequently lift and/or carry 5 pounds, but she was only able to stand less than one hour a day and only five minutes continuously. *Id.* at 624. Ms. Wise was now able to sit for two hours and to sit continuously for thirty minutes. *Id.* Based on these medical source statements, Ms. Wise would be unable to perform even the most basic

sedentary work. The record, however, does not support the limitations found by Dr. Carpenter.

Dr. Carpenter's treatment notes do not indicate that she performed any objective testing; they focus instead on Ms. Wise's subjective complaints. *See*, *e.g.*, Aplt. App. at 412-413; 566-567. In addition, the diagnostic testing actually ordered by Dr. Carpenter does not support the limitations in her medical source statements. *See*, *e.g.*, Aplt. App. at 622 (diagnostic imaging of ankle shows no evidence of hardware failure or acute fracture); *id.* at 614 (diagnostic imaging of left foot shows no joint or osseous abnormalities); *id.* at 605-06 (diagnostic imaging of left knee shows no acute fracture, dislocation or joint effusion).

Other evidence in the record is also inconsistent with Dr. Carpenter's opinion. Ms. Wise was examined at University Health Partners Orthopedic Surgery Resident Clinic as a follow-up to the injuries she sustained in her automobile accident. The examination revealed that her humerus and tibia fractures were healed. Aplt. App. at 396. The progress notes state also that although Ms. Wise cannot return to her previous manual labor job, "[s]he would . . . be able to remain sitting at a desk type job such as computer work *or other sedentary type jobs*." *Id.* at 396-97 (emphasis added).

Ms. Wise was also seen by Dr. Howard for a consultative examination. Dr. Howard performed a range of motion evaluation. *Id.* at 575-78. Dr. Howard

determined that Ms. Wise had full range of motion in her upper extremities (shoulders, elbows, wrists, and hands) and full range of motion in her lower extremities (hips, knees, ankles and feet), with the exception that she could not flex her knee more than about 100 degrees. *Id.* at 573, 575-578. Dr. Howard also noted that Ms. Wise walked with "a good stable solid gait" and that "she had a very slight limp requiring no assistive device." *Id.* at 574.

Although Ms. Wise contends that "[t]he file as a whole," supports Dr. Carpenter's opinion, she does not point to any specific record evidence that would justify this assertion. Aplt. Br. at 11. In fact, Ms. Wise barely mentions Dr. Carpenter in the argument section of her brief. *See id.* at 14-18. Dr. Carpenter's medical source statements indicate that Ms. Wise is unable to perform even sedentary work. The objective tests ordered by Dr. Carpenter, however, indicate that Ms. Wise's injuries from her automobile accident have healed. In addition, Dr. Howard's range of motion testing demonstrates that Ms. Wise has a full range of motion in her upper and lower extremities, with the exception of a slightly decreased range of motion in her left knee. And, the medical records from the doctors who examined Ms. Wise for the follow-up to her accident state that her injuries are healed and that she can perform sedentary work. Based on our review of the record, we conclude that there is substantial

-6-

evidence to support the ALJ's conclusion that Dr. Carpenter's opinion was not entitled to controlling weight and that it should be rejected.

Dr. Houston

Dr. Houston treated Ms. Wise from August 30, 2000 through January 2001. The record shows that Dr. Houston diagnosed Ms. Wise with bipolar disorder and that she prescribed three medications for Ms. Wise, including Prozac. *See* Aplt. App. at 507-508, 511. There are also three mental status examination forms from August 30, September 6 and September 12, *id.* at 515-517, and treatment notes from September 13 and October 11, *id* at 511-512. Dr. Houston completed a mental medical source statement on January 10, 2001 in which she reported that Ms. Wise is markedly limited in her ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. *Id.* at 518-19. Dr. Houston also filled out a mental

status form on January 24, in which she gave a more detailed report of her observations of Ms. Wise. For example, she noted that:

> Client has difficulty assimilating information. I must repeat things at times, more than once, for clarification to client . . . . [s]he has difficulty thinking and making decisions. She can reason thoughts out if given appropriate time frame; she does respond after her complete understanding . . . . Karen has difficulty remembering, but writes things down. She can carry out simple instructions, if stated in step by step terms. Complete instructions appear to be a problem due to client's ability to concentrate and remember.

*Id.* at 509. Dr. Houston concluded that Ms. Wise's prognosis was guarded and that there was "little hope of improvement." *Id.*

Since Dr. Carpenter mainly treated Ms. Wise for her physical conditions and Dr. Houston treated Ms. Wise solely for her mental conditions, the ALJ's combined treatment of these opinions has made our review more difficult. As discussed above, the ALJ's reasons for rejecting Dr. Carpenter's opinion are supported by the record. In contrast, however, applying these same reasons to rejecting Dr. Houston's opinion about Ms. Wise's medical condition does not make sense. The ALJ talks about a lack of "objective medical evidence" and "diagnostic testing." Aplt. App. at 25. But a psychological opinion does not need to be based on "tests;" those findings can be based on "observed signs and symptoms." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. subpart P, App. 1 § 12.00(B)). Dr. Houston's observations of Ms. Wise do constitute specific medical findings.

-8-

The ALJ also concluded that Dr. Houston's opinion was "inconsistent with the credible evidence of record," Aplt. App. at 26, but he fails to explain what those inconsistencies are. In the case of Dr. Carpenter, the inconsistencies were obvious, but with Dr. Houston, the record is not as clear. Ms. Wise was examined by Dr. Mynatt, a consulting physician. Dr. Mynatt diagnosed her with major depressive disorder and generalized anxiety. He noted that she has "symptoms affecting sleep, appetite, memory, concentration and energy." *Id.* at 538. He concluded that "[e]nvironment is a problem in symptom otology as she has difficulties interacting with others, and has difficulty in employment, financial and other areas." *Id*. at 539. He rated her level of functioning at 52, which is indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning, *see* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). Dr. Mynatt concluded that Ms. Wise's "condition is not expected to improve significantly within the next 12 months." *Id.* Without any guidance from the ALJ, this opinion appears in large part to be consistent with Dr. Houston's assessment.

Ms. Wise's records were also reviewed by two agency experts. It does not appear that either of these physicians actually evaluated Ms. Wise in person. The first doctor concluded that Ms. Wise was not markedly limited in any areas and was only moderately limited in three areas. *Id.* at 534-35. The second doctor

concluded that Ms. Wise was markedly limited in her ability to understand and remember detailed instructions; carry out detailed instructions and interact appropriately with the public. *Id.* at 595-96. The first doctor's opinion is inconsistent with most of the evidence in the record, including the opinion of the second agency expert. The second expert's conclusion that Ms. Wise is markedly limited in her ability to understand, remember and carry out detailed instructions is consistent with Dr. Houston's assessment, although the opinions do differ in other respects. The agency expert's conclusions are reported in a mental residual functional capacity assessment, which is a standard form with boxes checked to indicate conclusions. "Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Williams*, 844 F.3d at 757 (quotation omitted). In addition, the ALJ is generally required to give more weight to the opinion of a treating physician than to an agency physician who has never seen the claimant. *Id.* ("[T]he opinions of physicians who have seen claimant over a period of time for purposes of treatment are given more weight over . . . those who only review the medical records and never examine the claimant.").

Finally, the ALJ determined in his RFC that Ms. Wise could perform sedentary work with the additional limitation of performing simple, routine tasks; however, Dr. Houston's mental RFC assessment included other more restrictive

-10-

limitations that could impact Ms. Wise's ability to hold a job.  For example, Dr. Houston determined that Ms. Wise was markedly limited in her ability to sustain an ordinary routine without special supervision; to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Because the ALJ failed to explain his reasons for rejecting Dr. Houston's additional restrictions, failed to distinguish the types of medical evidence presented by Dr. Houston from that of Dr. Carpenter, and failed to explain or identify what the inconsistencies were between Dr. Houston's opinion and the other substantial evidence in the record, the ALJ's reasons for rejecting Dr. Houston's opinion are not "sufficiently specific" to enable this court to meaningfully review his findings.  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).  We conclude that the ALJ's rejection of Dr. Houston's opinion is not supported by substantial evidence and we must remand for further findings.

Accordingly, we AFFIRM the ALJ's determination with respect to Dr. Carpenter, but we REVERSE and REMAND the ALJ's determination with respect to Dr. Houston.

Entered for the Court

Clarence A. Brimmer
District Judge