**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAWRENCE SEGURA,

        Plaintiff - Appellant,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant - Appellee.

No. 04-1173
(D.C. No. 03-F-288 (MJW))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **O'BRIEN** , **HOLLOWAY** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Claimant Lawrence Segura appeals the district court's affirmance of the

decision by the Commissioner of Social Security denying his application for

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Supplemental Security Income (SSI). Because the Commissioner's decision is supported by substantial evidence and no legal errors occurred, we affirm.

BACKGROUND

Mr. Segura alleges that his disability began with a 1992 fall from a bridge, while he was working as a cement finisher. This is his second application for benefits. Starting in 1992, he received benefits based on a supplemental plea that, in addition to his work-related injuries, he suffered from alcoholism. These benefits were terminated in 1997 pursuant to 42 U.S.C. § 1382c(a)(3)(J), which provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." And, in any event, Mr. Segura would have been ineligible for benefits from December 1997 through February 2000 because he was incarcerated in the Denver County Jail. *See* 20 C.F.R. §§ 404.468, 416.22.

With his current application, filed upon his release from jail, Mr. Segura alleges disability as of June 16, 2000, due to pain in his back, neck, shoulders, upper extremities, and left foot. He also claims depression, headaches, and cognitive limitations. The medical record consists primarily of three consultative reports, based on examinations performed in conjunction with Mr. Segura's application. Dr. Jonathan Dietz, a physician, recorded claimant's account of his

medical history and condition. Mr. Segura stated that he had shattered his left foot in the 1992 accident, that he was last treated or evaluated for this injury in 1993, but that he still suffered severe foot and back pain. Moreover he reported that he was in pain from a 1997 injury to his right forearm and experienced pain and numbness from multiple injuries to his fingers. Mr. Segura had no treatment in jail. He took no prescription medications.

Based on his examination, Dr. Dietz found deformity in Mr. Segura's left foot, with associated tenderness and scarring from surgery. He had decreased range of motion in his left ankle and slightly decreased range of motion in his back and fingers. Additionally, Dr. Dietz diagnosed a mood disorder, cognitive impairment, deconditioning, and a mild increase in blood pressure. As of August 2, 2000, Dr. Dietz's functional assessment limited Mr. Segura's ability to stand and lift and also anticipated problems with interpersonal communication and skills requiring memory.

After Dr. Dietz provided his report, two consultants evaluated Mr. Segura's psychological status. On September 3, 2000, Dr. Timothy Cucich, a physician, conducted a mental-status examination. Dr. Cucich's diagnostic impression was that Mr. Segura's alcohol dependence was in remission and that he had a mood disorder secondary to chronic pain syndrome. Dr. Cucich rated Mr. Segura's

global assessment of functioning (GAF) score as 65 and recommended additional psychological testing to help decipher his ostensible cognitive limitations. [1]

The agency then requested Brett Valette, Ph.D., to examine Mr. Segura and provide an opinion on his ability to perform basic work tasks. Dr. Valette diagnosed dysthymia (mild chronic depression) and pain disorder associated with medical and psychological factors. He assigned Mr. Segura a GAF score of 50, but noted that Mr. Segura "gave up very, very, easily" in attempting to answer questions (perhaps due to his dysthymia and pain disorder) and that Mr. Segura's educational history was inconsistent with his low test scores. Admin. R. at 194. Dr. Valette suggested that the scores may be invalid and recommended ruling out cognitive and memory impairment. Because of his reservations about the validity of the testing results, Dr. Valette stated that he could not determine Mr. Segura's abilities with regard to detailed instructions. But he assessed Mr. Segura with only a slight limitation of the ability to understand, remember, and carry out short and simple instructions and to make judgments on simple work-related decisions.

---

[1] A global assessment of functioning score "is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning. A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Langley v. Barnhart,* 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quotations, brackets, and elipses omitted).

Mr. Segura's application was denied at the initial level of consideration and after a hearing before an Administrative Law Judge (ALJ). The ALJ followed the required sequential evaluation process for disability claims. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). Because Mr. Segura was not engaged in substantial gainful employment, the ALJ proceeded to step two and determined that Mr. Segura's left foot, right forearm, left shoulder, back pain, along with dysthymic and pain disorders with related cognitive impairment, constituted severe impairments. At step three, the ALJ found that Mr. Segura had no impairment or combination of impairments which satisfied any of the Commissioner's listing of impairments.

Based on the medical record, including consideration of Mr. Segura's allegations of disabling pain and the testimony at the hearing, the ALJ concluded at step four that Mr. Segura could not perform his past relevant work, but that he had the residual functional capacity for a restricted range of light work. Moving to the fifth and final step in the sequential process, and based on hypothetical questions posed to a vocational expert, the ALJ determined that there were sedentary and light jobs which Mr. Segura was able to perform.

Accordingly, the ALJ concluded that Mr. Segura was not disabled. Mr. Segura's claim was then processed under procedures established to test elimination of the request for Appeals Council review, so that the ALJ's decision

became the final decision for purposes of judicial review. *See* 20 C.F.R. § 416.1466. Upon appeal, the district court denied relief.

DISCUSSION

We review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotation marks omitted). "[B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial," but we "neither reweigh the evidence nor substitute our discretion for that of the Commissioner." *Id.* (internal quotation marks and brackets omitted).

On appeal, Mr. Segura asserts three main reasons why the Commissioner's decision is not supported by substantial evidence. First, he challenges the ALJ's discounting of his testimony on his pain levels. In evaluating an ALJ's credibility determination when a claimant alleges disabling pain, we employ a three-part framework that considers

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995) (quotations omitted). It is "difficult," however, for a claimant "to establish disabling pain without the explicit confirmation of treating physicians." *Id.* (internal quotation marks omitted). We generally defer to an ALJ's evaluation of credibility as long as the findings are linked to substantial evidence. *Id.* at 391.

In this case, the ALJ explained his reasons for determining that Mr. Segura's testimony was not wholly credible. A major factor was the lack of regular medical treatment, including prescriptions for pain relief. Mr. Segura had not been treated for his left-foot problems since 1993, or his right-arm injury since 1997. He attended physical therapy in 2001 for a dislocated and fractured left shoulder, but ceased therapy after six sessions. Also, the ALJ noted that Mr. Segura's daily activities were inconsistent with his complaints of extreme pain. The ALJ applied the correct legal standards in evaluating Mr. Segura's subjective allegations of pain, and the ALJ's assessment of credibility is supported by substantial evidence in the record.

Mr. Segura's second argument is that the ALJ lacked sufficient evidence upon which to make RFC findings, because he failed to order an additional psychoneurological evaluation. The ALJ has considerable discretion to procure consultative examinations. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). "The standard" for determining whether the ALJ fully

developed the record "is one of reasonable good judgment." *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997).

Contrary to Mr. Segura's contentions, the ALJ did not need further mental-status evidence to reach an RFC determination. The record here contains two psychological evaluations. The second consultative report provided an affirmative assessment of Mr. Segura's mental ability to do simple work-related activities in spite of his dysthymia and pain disorder. Indeed, this report indicated that his low scores may not accurately reflect his true intellectual functioning. And the ALJ accounted for Mr. Segura's mental limitations by determining that his reasoning, mathematical, and language development skills were on the most basic rung of the General Educational Development Scale described in the *Dictionary of Occupational Titles*, App. C, 1009-12 (U.S. Dep't of Labor, Employment, & Training Admin., 4th ed. 1991). The ALJ restricted the jobs which Mr. Segura could perform to those requiring only the mental ability to "understand, remember and carry out one and two-step work instructions, in jobs that are routine and repetitive in nature." Admin. R. at 15. Under these circumstances, there was no need to order another consultative examination.

Finally, Mr. Segura claims error in the ALJ's declining to presume that a person with Mr. Segura's problems "would logically miss work two or three days per month." Aplt. Br. at 9. In essence, Mr. Segura disagrees with the weight the

ALJ gave to various facts in reaching an RFC determination. But, as previously stated, we may not reweigh the evidence on appeal.

The judgment of the district court is AFFIRMED.


Entered for the Court


William J. Holloway
Circuit Judge