**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOE JEFFRIES,

        Plaintiff–Appellant,

v.

SOCIAL SECURITY
ADMINISTRATION, Michael J.
Astrue, Commissioner of the Social
Security Administration,

        Defendant–Appellee.

No. 09-2086
(D.C. No. 1:08-CV-00436-WPL)
(D. N.M.)

### ORDER AND JUDGMENT[*]

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

Joe Jeffries appeals from an order of the district court affirming a decision

by the Commissioner of the Social Security Administration ("Commissioner") to

deny Jeffries' application for Disability Insurance and Supplemental Security

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Income ("SSI") benefits.  Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

**I**

Jeffries filed for disability benefits and SSI in the fall of 2004.  He alleged disability based on a back injury, rib fractures on his right side, and accompanying pain.  The agency denied his applications initially and on reconsideration.

On November 30, 2005, Jeffries received a de novo hearing before an administrative law judge ("ALJ").  The ALJ determined that Jeffries retained residual functional capacity ("RFC") to perform sedentary work, but that he could not climb ropes, ladders, or scaffolds and should avoid concentrated exposure to unprotected heights and hazardous moving machinery.  At the same time, Jeffries could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally.  Based on this RFC, the ALJ concluded that, although Jeffries could not return to his past relevant work, there were a significant number of other jobs that he could perform in the national or regional economy.  These jobs included working as a charge account clerk, jewelry sorter, or surveillance monitor.  Applying the Medical-Vocational Guidelines, the ALJ ruled that Jeffries was not disabled within the meaning of the Social Security Act.

Jeffries appealed the ALJ's decision to the Appeals Council.  He submitted additional evidence that became available after the ALJ's decision, including

medical treatment notes from his treating physician and reports completed by two

consultative examiners.  The Appeals Council considered this new evidence but

denied review, making the ALJ's decision the Commissioner's final decision.[1]

**II**

"Our review of the [Commissioner's] decision is limited to whether his

findings are supported by substantial evidence in the record and whether he

applied the correct legal standards."  Andrade v. Sec'y of Health & Human Servs.,

985 F.2d 1045, 1047 (10th Cir. 1993) (quotations omitted).  Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989)

(quotations omitted).

The Commissioner has established a five-step sequential evaluation process

to determine whether a claimant is disabled.  See Williams v. Bowen, 844 F.2d

748, 750-52 (10th Cir. 1988) (describing process).  The claimant bears the burden

of establishing a prima facie case of disability at steps one through four.  Id.

at 751 n.2.  If the claimant successfully meets this burden, at step five the burden

of proof shifts to the Commissioner to show that the claimant retains sufficient

---

[1] Because the Appeals Council considered the additional evidence Jeffries
submitted, this evidence became part of the administrative record.  O'Dell v.
Shalala, 44 F.3d 855, 859 (10th Cir. 1994).  The agency's final decision
"necessarily includes the Appeals Council's conclusion that the ALJ's findings
remained correct despite the new evidence."  Id.  We therefore consider the entire
record, including the new evidence, in conducting our review.

RFC to perform work in the national economy, given his age, education, and work experience. Id. at 751. In the present case, the Commissioner reached his decision at step five and therefore bore the burden of proving Jeffries' ability to work.

On appeal, Jeffries asserts that: (1) the ALJ failed to give controlling weight to the medical opinions of his treating physician; (2) substantial evidence does not support the ALJ's conclusion that Jeffries could perform work in the national economy; and (3) the ALJ did not evaluate Jeffries' complaints of pain under the applicable legal framework.

**A**

**1**

Following an MRI of Jeffries' back in April 2005, Dr. Ravi Bhasker diagnosed him with multilateral degenerative disc disease with a small central disc herniation. At the request of Jeffries' attorney, Dr. Bhasker completed an RFC form. Through a series of check-off boxes on the form, he indicated that Jeffries could: (1) occasionally and frequently lift less than ten pounds; (2) stand and walk fewer than two hours out of an eight-hour workday; and (3) sit fewer than four hours out of an eight-hour workday. Dr. Bhasker wrote on the form that Jeffries suffered from a pain-producing impairment and that his pain was severe, causing sleep disturbances and fatigue. Dr. Bhasker assigned "marked" limitations to Jeffries' ability to "[m]aintain attention and concentration for

-4-

extended periods"; "[m]aintain physical effort for long periods"; "[s]ustain an ordinary routine without special supervision"; "[w]ork in coordination with/or [in] proximity to others without being distracted by them"; "[m]ake simple work-related decisions"; and "[c]omplete a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without [an] unreasonable number and length of rest periods." These restrictions are more severe than those the ALJ assigned to Jeffries in her RFC findings.

In February 2007, Dr. Bhasker wrote in his progress notes that, although Jeffries was "attempting to start his own cab business," he was currently "disabled due to the severe pain in his back." The next month, Dr. Bhasker stated: "At the present time, [Jeffries] is unable to work. I have told him he cannot work. . . . I do believe that the patient is disabled and unable to do any kind of work that would involve heavy lifting, squatting, or bending."

**2**

To properly evaluate the opinion of a treating physician, an ALJ must engage in the following analysis:

> [The] ALJ must give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion. Further, the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotations, citations, and alteration omitted).

In determining how much weight to give a treating source's opinion, an ALJ must first decide whether the opinion qualifies for "controlling weight." Id. To make this decision, the ALJ must "first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is no, then the controlling-weight analysis is complete. Watkins, 350 F.3d at 1300. On the other hand, "[i]f the ALJ finds that the [doctor's] opinion is well-supported, she must then confirm that the opinion is consistent with other substantial evidence in the record." Id.

Even if the ALJ finds that the opinion is not entitled to controlling weight, she must still afford it deference and weigh it according to the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. SSR 96-2p, 1996 WL 374188, at *4. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted).

After considering these factors, the ALJ must give good reasons for the weight she ultimately assigns the opinion in her notice of determination or decision. If the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.[2]

**3**

In her evaluation of Dr. Bhasker's RFC opinion, the ALJ stated:

Claimant's treating physician, Ravi Bhasker, M.D., has seen Mr. Jeffries since April 2005, for his low back pain. He has completed two functional capacity evaluations, one for exertional, and one for non-exertional limitations. Essentially, Dr. Bhasker opined that Mr. Jeffries cannot work because of his back condition. Ordinarily, I should accord a treating physician's opinion controlling weight. However, after reviewing Dr. Bhasker's progress notes, I find little objective support for his opinion of disability. The MRI results to which he alludes as basis for his opinion of exertional limitations, were given short shrift by Dr. Gelinas, who essentially[] found them unremarkable. Thus, it appears that Dr. Bhasker has based his assessments on Claimant's allegations of pain, even though he remarks repeatedly that prescribed medications adequately control claimant's pain. However, objective medical findings do not support a disabling level of pain. Moreover, most of Claimant's visits to Dr. Bhasker appear to be for medication refills, without clinical examinations. For these reasons, I accord to Dr. Bhasker's functional capacity evaluations little weight.

---

[2] Medical source opinions on certain issues reserved to the Commissioner are not given controlling weight, even when provided by a treating physician. Although these opinions are still considered, they are not given any special significance. SSR 96-8p, 1996 WL 374184, at *8 n.8. To the extent that Dr. Bhasker's opinions fell within the category of issues reserved to the Commissioner, the Commissioner did not err by failing to give them controlling weight.

On appeal, while admitting that the ALJ provided specific reasons for her conclusions concerning Dr. Bhasker's opinions, Jeffries contends that her analysis was flawed because: (1) the reasons given by the ALJ were neither legitimate nor accurate; and (2) the ALJ failed to complete all of the steps required by Watkins.

Jeffries first takes issue with the ALJ's statement that Dr. Bhasker's opinion finds little objective support in the record. On the RFC form, Dr. Bhasker was asked to state the medical basis for his RFC opinion. He relied exclusively on the MRI results and on the opinion of a consultant, Dr. Claude Gelinas. In his opinion, Dr. Gelinas stated that the MRI showed only "mild degenerative changes" and "[n]o significant nerve root stenosis." As a result, his diagnosis was "[e]arly degenerative disc disease." Dr. Gelinas also saw no "pathology to justify surgery" and instead recommended that Jeffries be referred to physiatry for pain management and pursue a program of physical therapy exercise and stretching. The ALJ credited these conclusions over Dr. Bhasker's ultimate opinion.

Because there were good reasons for the ALJ to credit Dr. Gelinas' conclusions over Dr. Bhasker's, we fail to see how the ALJ acted improperly. First, Dr. Gelinas' conclusions were more specific than Dr. Bhasker's. Second, unlike Dr. Bhasker, Dr. Gelinas is an orthopedic surgeon who specializes in spinal pathology. Finally, it was Dr. Bhasker who referred Jeffries to

Dr. Gelinas, and Dr. Bhasker later tailored his recommendations for Jeffries' care to those of Dr. Gelinas.

We also do not see error in the ALJ's characterization of Dr. Gelinas' reading of the MRI. Jeffries complains that the ALJ misconstrued Dr. Gelinas' reading of the MRI when she stated that Dr. Gelinas found the MRI results "unremarkable." Actually, the ALJ stated that Dr. Gelinas "essentially[] found [the results] unremarkable." But even if "unremarkable" was too strong a word in this context, the ALJ's basic point was well-taken.[3] For the reasons we have already specified, nothing in Dr. Gelinas' observations supports Dr. Bhasker's reliance on the MRI results as objective proof of disability. Dr. Gelinas interpreted the MRI as showing only mild degenerative changes and early degenerative disc disease. Jeffries' challenge is therefore without merit.

Jeffries also takes issue with the ALJ's finding that Dr. Bhasker's assessment of Jeffries' limitations was based on his "allegations of pain" and therefore entitled to little weight. Citing to Sisco v. United States Department of Health & Human Services, 10 F.3d 739 (10th Cir. 1993), Jeffries argues that an ALJ should not second guess the manner in which a doctor arrives at his opinions

---

[3] The record does not support Jeffries' contention that "the ALJ made repeated comments within her decision stating her disagreement with the objective evidence insofar as she viewed Jeffries's degenerative spinal condition to be 'unremarkable.'" The ALJ rejected only Dr. Bhasker's interpretation of the MRI results on this basis.

or presume to prescribe the proper methods for a physician to follow in reaching a medical opinion. Our reasoning in <u>Sisco</u>, however, differed significantly from the analysis required here. In <u>Sisco</u>, the ALJ rejected the consensus of the claimant's treating physician and the Mayo Clinic that the claimant suffered from chronic fatigue syndrome because she could not produce a "dipstick" laboratory test to diagnose her symptoms. <u>Id.</u> at 744. In fact, no such "dipstick" test existed, and the claimant's diagnosis of chronic fatigue syndrome was actually supported by medically acceptable techniques. <u>Id.</u>

In the present case, the ALJ assigned little weight to Dr. Bhasker's opinion because it was unsupported by medically acceptable diagnostic techniques. As noted above, the results of Jeffries' MRI were the <u>only</u> objective evidence on which Dr. Bhasker relied.[4] The ALJ permissibly credited Dr. Gelinas' interpretation of the MRI rather than Dr. Bhasker's and then ruled out the only other basis for Dr. Bhasker's opinion: Jeffries' allegations of pain. These allegations were contradicted by Dr. Bhasker's own observations that the medication controlled Jeffries' pain. Because the ALJ provided adequate reasons

---

[4] Dr. Gelinas may also have performed some range-of-motion ("ROM") tests on Jeffries. In the same letter to Dr. Bhasker in which he gave his opinion about the MRI, Dr. Gelinas also stated that he found Jeffries' ROM <u>slightly</u> reduced due to pain. Dr. Gelinas' opinions about Jeffries' ROM were incorporated into his conclusions expressed in the same letter, i.e., that Jeffries' back problems were mild and required only non-surgical intervention. The ROM findings thus do not form a separate, objective basis to support the more serious restrictions Dr. Bhasker assigned in his RFC opinion.

for her conclusion that Dr. Bhasker's opinions were not entitled to controlling weight, we reject Jeffries' contention that the ALJ's analysis relied on impermissible speculation.

Jeffries advances a final argument in opposition to the ALJ's evaluation of Dr. Bhasker's opinions. He argues that after denying controlling weight to Dr. Bhasker's opinions, the ALJ failed to follow the second part of the <u>Watkins</u> analysis: the determination of what lesser weight should be assigned to those opinions. Our review of the ALJ's decision persuades us otherwise. First, the ALJ expressly determined that Dr. Bhasker's opinions were entitled to <u>little</u> weight. In reaching this conclusion, she considered the factors described in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). She specifically discussed the length of the treatment relationship between Jeffries and Dr. Bhasker, the frequency of examination, and the nature and extent of treatment provided. She also noted that although Jeffries had been seeing Dr. Bhasker for his back problems since April 2005, most of the visits consisted primarily of medication refills without clinical examination. Second, the ALJ discussed the degree to which Dr. Bhasker's opinions were supported by the evidence. She noted that Dr. Gelinas concluded that the MRI showed only mild degenerative changes and no significant nerve root stenosis. Finally, the ALJ considered the specialization of the doctors in the record. Dr. Gelinas specialized as an orthopedic surgeon while Dr. Bhasker did not. Thus, the ALJ provided adequate reasons for

-11-

assigning little weight to Dr. Bhasker's opinions and did not commit reversible error.[5]

**B**

Jeffries next contends that the ALJ's step-five finding that he could perform other work must be reversed because: (1) the RFC assessment was unsupported by substantial evidence; and (2) the ALJ's hypothetical questions to the vocational expert ("VE") did not encompass all of Jeffries' limitations.

**1**

Citing to SSR 96-8p, 1996 WL 374184, at *7, Jeffries first argues that the ALJ improperly failed to give reasons for rejecting the specific limitations set forth in Dr. Bhasker's RFC opinion. Jeffries claims that in formulating her RFC assessment, the ALJ should have specifically discussed each of the restrictions Dr. Bhasker imposed on Jeffries' functional capacities, such as his ability to sit, stand, and walk.

Jeffries points to no case law or other relevant authority mandating such a rigid approach to the discussion requirements of SSR 96-8p.[6] The ruling simply

---

[5] To the extent Jeffries challenges the Appeals Council's failure to grant review based on statements contained in Dr. Bhasker's treatment notes of February 14, 2007, and May 16, 2007, we also discern no reversible error. The opinions were contradicted by other medical evidence and expressed conclusions on issues reserved to the Commissioner.

[6] Where an ALJ implicitly accepts a physician's opinion in formulating her RFC, but rejects some of the limitations contained in that opinion, she may have a
(continued...)

-12-

states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7. As we have detailed above, the ALJ provided such an explanation, giving specific, legitimate reasons for assigning little weight to Dr. Bhasker's entire RFC opinion.[7]

Jeffries also contends that in formulating her RFC opinion, the ALJ improperly relied on information from two non-examining reviewing physicians and one non-treating consultative examiner. He argues that these opinions should not outweigh that of his treating physician. Although in general an ALJ should give greater weight to the opinion of a treating physician than that of a consultant or non-examining physician, see 20 C.F.R. § 404.1527(d)(2), here the ALJ provided legitimate reasons for assigning little weight to Dr. Bhasker's opinion. Moreover, an ALJ is entitled to rely on all the medical evidence in the record,

---

[6](...continued)
duty to give reasons for the specific limitations she rejects. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007). But that is not the scenario here. Unlike the ALJ in Haga, the ALJ here provided reasons for assigning little weight to Dr. Bhasker's entire opinion.

[7] It is true that "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary [for the ALJ] to decide whether to adopt or not adopt each one." SSR 96-5p, 1996 WL 374183, at *4. In the present case, however, the reasons the ALJ gave for rejecting Dr. Bhasker's assessment encompassed all of the restrictions she rejected, and specific discussion of each was not required.

-13-

including that of the consulting and non-examining physicians.  See SSR 96-6p, 1996 WL 374180, at *1-*2.[8]

**2**

In addition to the RFC assessment, Jeffries also challenges the ALJ's hypothetical question to the VE.  He argues that when the ALJ questioned the VE regarding what occupations someone with Jeffries' strength limitations could be capable of performing in a national or regional economy, the ALJ should have included the limitations described by Dr. Bhasker.  An ALJ, however, is not required to include limitations "not accepted by [her] as supported by the record" in her hypothetical question.  Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995).  For the reasons we have already stated, the ALJ permissibly rejected the additional restrictions on Jeffries' RFC as specified by Dr. Bhasker.  She therefore did not err in omitting these restrictions from her hypothetical question to the VE.

---

[8] Jeffries complains that the non-treating consultative examiner did not have his x-ray or MRI results to review at the time of his examination.  As a result, Jeffries contends that the Commissioner failed in his duty to provide the consultative examiner with "any necessary background information about [Jeffries'] condition."  20 C.F.R. §§ 404.1517, 416.917.  At the time the consultative examiner observed Jeffries, however, the MRI results did not yet exist.  Although the x-rays had been completed the day before, and apparently were not provided to the consultative examiner, they were made available to the non-examining physicians.  These physicians opined one day later that the x-rays showed only early sclerotic changes that pointed to a non-severe condition.

# C

Finally, Jeffries asserts that the ALJ erred by failing to apply the proper legal framework to his claim of disabling pain. In assessing a claim of disabling pain, an ALJ is required to follow a three-step process. <u>Luna v. Bowen</u>, 834 F.2d 161, 163 (10th Cir. 1987). First, she must determine whether a pain-producing impairment has been established by objective medical evidence. <u>Id.</u> Second, she must determine whether at least a "loose nexus" has been established "between the proven impairment and the pain alleged." <u>Id.</u> at 164. Finally, the ALJ must determine whether, considering all the evidence, both subjective and objective, the claimant's pain is in fact disabling. <u>Id.</u> at 163.

Jeffries concentrates his attack on the third step of the analysis. He asserts that in reaching the conclusion that his complaints of pain were not entirely credible, the ALJ ignored several factors demonstrating that his pain was in fact disabling. Specifically, the ALJ was required to consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

<u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). According to the Jeffries, the ALJ failed to consider: (1) the medications he takes; (2) certain medical treatments he received; (3) lay testimony from his wife

concerning his pain; (4) statements from the consultative physicians; and (5) other evidence he presented concerning his disabling pain.

First, Jeffries claims that "the ALJ failed to even mention that [he] was consistently prescribed and took medication for his pain." This assertion is incorrect. Although the ALJ did not identify or discuss the specific medications Jeffries took, she noted that he had seen Dr. Bhasker for medication refills and that Dr. Bhasker had repeatedly remarked that the prescribed medication adequately controlled his pain. These remarks show that the ALJ gave adequate consideration to Jeffries' medications.

Second, Jeffries contends that the ALJ erred in failing to mention the analgesic epidural injections he received for his back pain. However, in support of her conclusion that medication adequately controlled Jeffries' pain, the ALJ specifically cited Dr. Bhasker's treatment note of October 25, 2006. In that note, Dr. Bhasker stated that Jeffries' "pain appears to be stable with his pain medication and injections." Thus, the ALJ gave adequate consideration to Jeffries' epidural injections and their effect on his pain.

Third, Jeffries complains that the ALJ did not consider the lay witness testimony from his wife concerning his pain. However, the ALJ stated:

> I have also considered the written statement from Claimant's wife.
> As his spouse, she is no doubt, biased, though understandably so.
> However, I am inclined to conclude that her perceptions of her
> husband's limitations are due in part to her husband's inclination to
> act more limited than he is, given the disparity between the objective

medical evidence and his symptoms. Therefore, I accord her statement some weight, but not substantial weight.

Jeffries' fourth argument is that the Appeals Council disregarded two examination reports that established the disabling nature of his pain. More specifically, Jeffries points to one report in which Dr. Greg McCarthy made statements that Jeffries' gait was "slow and antalgic"; that he had positive straight-leg testing in both the supine and sitting positions; that he was unable to walk on his heels or tiptoes; and that he was unable to squat or to perform a heel-to-toe walk due to pain in his lower back. Dr. McCarthy also concluded, however, that Jeffries could lift ten pounds on an occasional basis and would be able to sit, stand, and walk sufficiently to complete an eight-hour workday. All told, Dr. McCarthy's conclusions about the physical limitations posed by Jeffries' pain do not contradict the ALJ's RFC determination.

Jeffries also draws our attention to a psychiatric assessment by Dr. Charles Mellon. He asserts that because Dr. Mellon did not diagnose him with a specific mental illness, but assigned him a Global Assessment of Functioning ("GAF") score of fifty-four,[9] the doctor must have based the low GAF score on his Axis III

---

[9] A GAF rating of fifty-four falls within the range of scores, fifty-one to sixty, that indicates moderate symptoms or functional difficulties in an individual's overall level of functioning. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text revision, 2000).

diagnosis of "Back pain with Herniated Discs." This diagnosis would indicate that Dr. Mellon considered Jeffries' back pain to be a very serious impairment.

However, Jeffries ignores the fact that Dr. Mellon diagnosed him with narcissistic personality disorder and concluded that his ability to interact with co-workers and supervisors would be moderately limited. Thus, the low GAF score could have been attributable to psychological factors other than pain. Without more, we cannot draw a straight line from Jeffries' GAF score to a conclusion that his back pain was sufficiently severe to call the ALJ's decision into question.

Finally, Jeffries argues that the ALJ failed to consider that his back pain continued even after he was provided with pain medication and injections. However, the ALJ never denied that Jeffries suffered from continuing back pain; rather, she rejected Jeffries' contention that the pain was disabling. In the same way, the Appeals Council never denied that Jeffries experienced pain; instead, it rejected the opinions of Dr. Bhasker about the disabling severity of the pain.[10] Based on the evidence in the record, these decisions were not in error.

---

[10] Jeffries complains that the ALJ made a finding that he did not comply with the prescribed physical therapy regime without considering the appropriate factors relating to non-compliance. It does not appear that he raised this argument in the district court. Accordingly, we do not consider it. See Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court.").

## III

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge