FILED
United States Court of Appeals
Tenth Circuit

December 21, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RANDY DUTTON,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 15-6066
(D.C. No. 5:13-CV-01339-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Randy Dutton appeals the district court's order affirming the Commissioner's

decision denying his application for Supplemental Security Income benefits (SSI).

Because the administrative law judge (ALJ) who decided Dutton's application failed

to properly consider Dutton's treating physician's opinion, we reverse and remand to

the district court with instructions to remand to the Commissioner for further

proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

In November 2010, Dutton sustained a blow to his head and lost consciousness as a result of a motor vehicle accident. Physicians at the University of Oklahoma Medical Center preliminarily diagnosed him with a head injury, a spinal injury, and a concussion. Dutton's treating physician, Dr. Timothy Puckett, diagnosed Dutton with an odontoid fracture at C2 of his cervical spine and fitted him with a halo device to hold the spine in proper alignment while it healed. Dutton needed little pain medication after the procedure and could walk without assistance on discharge.

In mid-January 2011, Dutton complained that the halo caused him discomfort. The halo was removed at the end of January, after X-rays showed his fracture was healing. But subsequent x-rays revealed the C2 fracture had not yet healed and Dutton was placed in a cervical collar until surgery could be arranged. In April 2011, Dr. Puckett and another surgeon successfully performed a spinal fusion with instrumentation involving C1 and C2 of the cervical spine. Dr. Puckett saw Dutton for several additional follow-up visits after his surgery.

Prior to his surgery, Dutton filed for SSI benefits with a protective filing date of February 15, 2011, alleging disability due to his neck fracture. The agency denied his application initially and on reconsideration. Dutton requested a de novo hearing before an ALJ.

On August 3, 2011, Dr. Puckett completed the "Cervical Spine Medical Source Statement" at issue in this appeal. Aplt. App., Vol. 2 at 339. On this form, he diagnosed Dutton with "Cervical Spine fracture w/subsequent non union." *Id.* He

2

described Dutton's symptoms as "substantial" and indicated he experienced significant limitation of motion.  *Id.*[1]

Although he stated that Dutton didn't suffer from "severe headache pain," Dr. Puckett noted his "[s]tiffness and mild headaches." *Id.* at 340.  He indicated that Dutton suffered from seven such headaches per week, lasting "all day," and that taking medication and a "[d]ark room" would make them better. *Id.* Dr. Puckett noted a "substantial decrease in [range of motion]." *Id.* He didn't generally limit Dutton's ability to walk, sit, or stand, but indicated he would "need a job that permits shifting positions ***at will*** from sitting, standing or walking[,]" and would need to walk every 90 minutes for at least 15 minutes each time, *id.* at 341. Dr. Puckett also indicated that Dutton could frequently carry up to 50 pounds, and frequently look down, with strained flexion of his neck; turn his head right or left; look up; and hold his head in a static position. *Id.* at 342.

Dr. Puckett stated that Dutton didn't need to take unscheduled breaks during the work day and would never be "off task" due to symptoms that interfered with his ability to pay attention or concentrate on simple work tasks.  He opined that Dutton

---

[1] Dr. Puckett specified Dutton's cervical range of motion as a percentage of normal:

| Extension | 50% | Flexion | 40% |
|---|---|---|---|
| Left rotation | 60% | Right rotation | 50% |
| Left lateral bending | 50% | Right lateral bending | 70% |

Aplt. App., Vol. 2 at 339.

was capable of normal work stress but that his impairments would likely produce "good days" and "bad days." *Id.* at 343. Even so, according to Dr. Puckett, Dutton was "[n]ever" likely to be absent from work as a result of his impairments or treatment. *Id.*

On June 19, 2012, the ALJ held a video hearing on Dutton's application. At the hearing, Dutton testified he had to turn his entire body to look to the left, and he suffered from chronic headaches that limited his concentration.

In his written decision after the hearing, the ALJ determined at step two of the required sequential analysis that Dutton's "status post cervical fracture" was a severe impairment, Aplt. App., Vol. 1 at 27, but that at step three it didn't meet or medically equal a listed impairment.[2] He further determined at step four that Dutton retained the residual functional capacity (RFC) to perform the full range of medium work.

In assessing Dutton's RFC, the ALJ indicated he had assigned Dr. Puckett's Cervical Spine Medical Source Statement "great weight." *Id.* at 28. He also stated that he had considered "the state agency examiners' assessment of [Dutton's] medium/light [RFC]" and found it "consistent with [his own] findings," but that he had afforded greater weight to Dr. Puckett's opinion than to theirs. *Id.* at 30.

Given his RFC and other vocational factors, the ALJ found that Dutton could return to his past relevant work as a telephone installer. Alternatively, he found that

---

[2] The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2.

"other jobs existed in significant numbers for an individual of [Dutton's] age, education and [RFC] such as Electronic Assembler . . ., Semi Conductor Assembler . . ., or Electronic Apprentice." *Id.* Therefore he determined Dutton wasn't disabled.

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

**DISCUSSION**

Dutton raises a single issue on appeal: whether the ALJ, while stating that he assigned Dr. Puckett's opinion great weight, merely selected those portions of the opinion that favored his RFC assessment, and ignored or failed to discuss those portions that did not. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

We review the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Dr. Puckett's findings concerning Dutton's ability to sit, walk, and stand generally support the ALJ's RFC assessment. Also, Dr. Puckett didn't appear to believe that Dutton's limited cervical range of motion would prevent him from frequently turning or flexing his neck. But the ALJ's assessment doesn't reflect other limitations reflected in Dr. Puckett's report, including non-exertional limitations. *See*

5

SSR 96–8p, 1996 WL 374184, \*5-\*6 (July 2, 1996) (Stating the ALJ must conduct his RFC assessment on a function-by-function basis and include both exertional and nonexertional limitations for both severe and nonsevere impairments). Assuming the ALJ rejected these additional limitations, he failed to provide acceptable reasons for doing so.

To begin with, Dr. Puckett indicated that Dutton requires a job that permits shifting positions "at will" from sitting, standing, or walking, and that he would require "periods of walking" every 90 minutes and during such "periods of walking" he would need to walk for 15 minutes. Aplt. App., Vol. 2 at 341. Neither Dr. Puckett nor the ALJ's decision clarified whether such 15-minute periods of walking would constitute a "break" in Dutton's work-related activities. The vocational expert (VE) indicated that if Dutton needed a 15-minute break every 90 minutes, it would affect (though perhaps not eliminate) competitive employment by reducing the occupational base. *Id.*, Vol. 1 at 55. Assuming that the walking involved would be considered a "break" from work-related activities, the VE's testimony suggests that this requirement would at least preclude reliance on an occupational base tied to the full range of medium work. Importantly, the ALJ's RFC simply doesn't account for or discuss these limitations.

Dr. Pickering's opinion that Dutton needs to shift positions "at will" appears entirely inconsistent with Dr. Pickering's conclusion that Dutton can sit and stand for more than two hours at a time before needing to change positions. In his response brief, the Commissioner doesn't concede this inconsistency nor attempt to synthesize

6

these conditions. Instead, the Commissioner points out that it was the ALJ's role to resolve such conflicts and that the ALJ can discount internally inconsistent positions. *See Haga*, 482 F.3d at 1208.

The problem with the Commissioner's approach, however, is that not only did the ALJ *not* discount these material and internally inconsistent conditions, the ALJ placed "great weight" on Dr. Puckett's overall opinion. And while there may well be some explanation for this significant inconsistency, the ALJ offered none. Based on this unexplained inconsistency alone, we must conclude the ALJ's determination was not supported by substantial evidence. But Dutton points out additional inconsistencies in the ALJ's findings.

Specifically, he notes the ALJ's RFC determination didn't reflect Dr. Puckett's statement that Dutton suffered from mild headaches seven times a week, lasting all day, that were improved with medication and spending time in a dark room. Dutton testified consistently, indicating that his headaches affect his ability to concentrate, and that even with Tylenol his symptoms are only "tolerable." Aplt. App., Vol. 2 at 50. Dutton further explained that when he experiences a bad headache, he spends most of the day lying down in a dark room. Additionally, the VE stated that Dutton's headaches "would eventually preclude employment" if they required him to stay home in a darkened room for even a day-and-a-half per month. *Id.* at 55-56.

In his step-two analysis, the ALJ concluded that Dutton's headaches were "treated with over-the-counter Tylenol with some lessening of symptoms," and found that they were not a "severe" impairment. *Id.* at 28. This was the last reference to

7

headaches in his decision. Yet in formulating his RFC, the ALJ was required to consider the effect of both severe and non-severe impairments. *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).

The ALJ failed to specifically reject Dutton's assertion—which found support in Dr. Puckett's report—that he required significant periods of time in a dark room to address his headaches. Instead, the ALJ merely recited boilerplate language about the assessment of credibility and concluded Dutton's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not as disabling as alleged." *Id.* at 29. In reaching this conclusion, the ALJ relied on Dutton's failure to seek ongoing medical attention, and his ability to "care for his own personal needs, cook, clean, do yard work, drive when necessary, shop twice a week, take care of mother an[d] nephew and attend Church." *Id.* But the ALJ didn't discuss Dutton's testimony that he can't afford ongoing medical attention, or Dr. Puckett's conclusion that his impairments were likely to produce "bad days" as well as good ones. *Id.*, Vol. 2 at 343.

Finally, although Dr. Puckett found that Dutton experienced significant limitation of motion, Aplt. App., Vol. 2 at 339, and included findings in his report indicating substantial restrictions on Dutton's cervical range of motion *id.*, in response to specific work-related questions he checked boxes that indicated no specific limitations on Dutton's ability to turn or flex his neck. *See id.* at 342 (indicating Dutton can "[f]requently" look down, with sustained flexion of neck; turn his head right or left; look up; and hold his head in a static position). These negative

8

checkmarked responses to questions on the form appear consistent with the ALJ's RFC assessment, but on remand the ALJ should explain how he resolved any inconsistencies between them and Dr. Puckett's range-of-motion findings.

In sum, the ALJ's assessment of Dr. Puckett's report raises more questions than it answers. To be sure, Dr. Puckett's report generally reflects an optimistic outlook about Dutton's ability to obtain and sustain gainful employment at some level. But it also reflects limitations that appear to affect the type of employment he can perform, limitations which find support in Dutton's hearing testimony. Not surprisingly, Dutton draws our attention to those portions of the report that reflect his limitations, while the Commissioner relies on those portions that reflect his abilities. But the bottom line is that the ALJ's three-word assessment of Dr. Puckett's report ("affording [it] great weight," *id.* at 28), doesn't resolve its significant ambiguities.

We agree with Dutton that the ALJ erred in citing only those portions of a treating physician's report that supported Dutton's ability to perform the exertional requirements of medium work, while failing to grapple with or explain his assessment of other portions of the report that appear to undermine the ALJ's conclusion that Dutton can perform an unlimited range of work at that level. Accordingly, we reverse the district court's judgment and remand this case to the

9

district court with instructions to remand it to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge